# IN THE SUPREME COURT OF CALIFORNIA

THE PEOPLE,
Plaintiff and Respondent,

v.

JULIAN MICAH BULLARD,
Defendant and Appellant.

S239488

Fourth Appellate District, Division Two
E065918

San Bernardino County Superior Court
FVI1200894

March 23, 2020

Justice Kruger authored the opinion of the Court, in which
Chief Justice Cantil-Sakauye and Justices Chin, Corrigan, Liu,
Cuéllar, and Groban concurred.

PEOPLE v. BULLARD

S239488


Opinion of the Court by Kruger, J.


In this case we again consider the application of the criminal sentencing reforms of Proposition 47, "the Safe Neighborhoods and Schools Act," to the offense of unlawfully taking or driving a vehicle under Vehicle Code section 10851 (section 10851).

One provision of Proposition 47, codified as section 490.2 of the Penal Code, reduced felony offenses consisting of theft of property worth $950 or less to misdemeanors. We have held that this theft-reduction provision, by its terms, applies to the subset of section 10851 convictions that are based on obtaining a vehicle worth $950 or less by theft. (*People v. Page* (2017) 3 Cal.5th 1175, 1187 (*Page*).) But we have also acknowledged that section 10851's prohibition on the unlawful taking of a vehicle sweeps somewhat more broadly than the term "theft" is ordinarily understood. (See *Page*, at p. 1182.) In particular, while liability for theft generally requires that the defendant have an intent to *permanently* deprive the owner of possession, section 10851 draws no distinction between temporary takings and permanent ones; it imposes liability on any person who takes a vehicle "with intent *either* to permanently *or* temporarily deprive" the owner of possession, "whether with *or* without intent to steal the vehicle." (§ 10851, subd. (a), italics added.)

The question before us is whether Proposition 47 now requires courts to draw a distinction under section 10851

between permanent and temporary vehicle takings—granting sentencing relief to those who take vehicles permanently but denying relief to those who take vehicles temporarily. We conclude the answer to this question is no: A person who has unlawfully taken a vehicle in violation of section 10851 is not disqualified from Proposition 47 relief because the person cannot prove he or she intended to keep the vehicle away from the owner indefinitely.

## I.

In 2012, defendant Julian Micah Bullard entered a negotiated plea of guilty to a felony charge of violating section 10851, subdivision (a). According to police reports, which the parties stipulated provided a factual basis for the plea, the facts of the offense were these:

After staying overnight at his girlfriend's home, defendant took her car keys from her purse and drove away in her car without her permission. The car was reported stolen. That night, defendant talked to his girlfriend and agreed to return the car. He drove it to his girlfriend's workplace, where he was arrested. Defendant admitted to police he took the car without permission, saying he had no reason for doing so other than that he did not want to walk and his " '[h]ead was messed up.' " He explained that, having nowhere to go, he drove the car around until it ran out of gas, then borrowed money for fuel, and eventually drove the car to his girlfriend's workplace. The vehicle, a 1993 Lincoln Town Car, was valued at approximately $500.

On his guilty plea to one felony count of violating section 10851, defendant was sentenced under Penal Code section 1170, subdivision (h), to 16 months in county jail.[1]

In 2014, voters passed Proposition 47. As relevant here, Proposition 47 added section 490.2 to the Penal Code, which provides (with exceptions inapplicable here): "Notwithstanding [Penal Code] Section 487 or any other provision of law defining grand theft, obtaining any property by theft where the value of the money, labor, real or personal property taken does not exceed nine hundred fifty dollars ($950) shall be considered petty theft and shall be punished as a misdemeanor . . . ." (Pen. Code, § 490.2, subd. (a).) A separate provision added by Proposition 47 established a procedure for redesignating a past felony offense as a misdemeanor if the offender has already completed his or her sentence and if he or she "would have been guilty of a misdemeanor under [Proposition 47] had this act been in effect at the time of the offense . . . ." (Pen. Code, § 1170.18, subd. (f).)

After Proposition 47 took effect, defendant petitioned to have his unlawful driving or taking conviction—for which he had by then completed the jail term—redesignated as a misdemeanor. (Pen. Code, § 1170.18, subd. (f).) The trial court denied the petition on the ground that a conviction for unlawful driving or taking under section 10851 " 'is not [a]ffected by Prop. 47.' " The Court of Appeal affirmed. (*People v. Bullard*

_____

[1]     Section 10851, subdivision (a), is an alternative felony-misdemeanor offense (also known as a "wobbler"), punishable by either a misdemeanor sentence of up to one year in county jail or a felony sentence calculated under Penal Code section 1170, subdivision (h). (§ 10851, subd. (a); see *People v. Lara* (2019) 6 Cal.5th 1128, 1131 (*Lara*).)

(Feb. 12, 2016, E065918 [nonpub. opn.].) The majority concluded that section 10851 convictions are categorically ineligible for Proposition 47 resentencing because the statute can be violated by driving a stolen car after the theft was complete (posttheft driving) or by taking a vehicle without the intent to permanently deprive the owner of possession, "as occurred in this case," neither of which constitutes theft of the vehicle. Justice Miller filed a concurring and dissenting opinion. He took the view that section 10851 convictions based on theft of the vehicle are eligible for resentencing, but he concurred in the result because defendant failed to show either that he intended to permanently deprive the owner of the vehicle or that the vehicle was valued at less than $950.

We granted defendant's petition for review but deferred briefing pending the decision in *Page*. In *Page*, we held that the theft-reduction provision does apply to those section 10851 convictions based on taking a vehicle with intent to permanently deprive the owner of possession (again, provided the vehicle is worth $950 or less), though not to the nontheft offense of driving a stolen car after the theft is complete. (*Page*, *supra*, 3 Cal.5th at p. 1187.) We reserved the question whether "equal protection or the avoidance of absurd consequences" requires extending misdemeanor treatment to a person "convicted for taking a vehicle *without* the intent to permanently deprive the owner of possession." (*Id.* at p. 1188, fn. 5.)[2]

---

[2] We again reserved this question in *Lara*, *supra*, 6 Cal.5th 1128. In *Lara*, we held that a person convicted and sentenced after Proposition 47's effective date for a qualifying offense committed before the initiative measure passed was entitled to application of Penal Code section 490.2 at trial and sentencing.

After *Page* became final, we ordered briefing in this case to consider whether the retroactive theft-reduction provision of Proposition 47 applies to section 10851 convictions based on taking a vehicle, in the absence of proof that the defendant intended to permanently deprive the owner of possession.

## II.

As we explained in *Page*, the question arises because of the unusual configuration of the section 10851 offense. That provision punishes any person "who drives or takes a vehicle not his or her own, without the consent of the owner thereof, and with intent either to permanently or temporarily deprive the owner thereof of his or her title to or possession of the vehicle, whether with or without intent to steal the vehicle . . . ." (§ 10851, subd. (a).) As we have noted, this provision "proscribes a wide range of conduct," including, but not limited to, vehicle theft. (*People v. Jaramillo* (1976) 16 Cal.3d 752, 757 (*Jaramillo*).)

For much of the 20th century, section 10851 (previously numbered as Vehicle Code section 503) served as one of three overlapping statutes criminalizing the taking or use of an

---

(*Lara*, at pp. 1133–1135.) We went on, however, to reject the defendant's claim that his was a qualifying offense; the defendant, who had been apprehended driving a stolen car several days after it was taken from its owner, had been tried and convicted solely on a theory of posttheft driving, not one of vehicle theft. (*Id.* at pp. 1135–1138.) We left unanswered the question, which was not presented by the facts of that case, whether taking a vehicle without the intent to permanently deprive the owner of it "must be treated as the equivalent of vehicle theft for purposes of Penal Code section 490.2." (*Lara*, at p. 1136, fn. 3.)

automobile without the owner's consent. The primary difference between the statutes, we explained, concerned the degree of wrongfulness of the defendant's intent. (*People v. Kehoe* (1949) 33 Cal.2d 711, 714.) The least serious of these statutory offenses was defined in Penal Code former section 499b, "commonly referred to as the 'misdemeanor joy-riding statute,'" which provided that a person who took an automobile or other vehicle "'for the purpose of temporarily using or operating the same, shall be deemed guilty of a misdemeanor.'" (*Jaramillo*, *supra*, 16 Cal.3d at p. 755.)[3] The most serious of these offenses was defined in Penal Code former section 487, subdivision 3, "commonly referred to as 'grand theft—auto,'" which provided that any person "who feloniously steals, takes, carries, or drives away the automobile of another is guilty of grand theft." (*Jaramillo*, at p. 755.) That statute had been interpreted to require an intent to deprive the car owner "permanently of its value and to appropriate the property to the use and benefit of the person taking it." (*Kehoe*, at p. 714.) Section 10851, which fell between these two poles, also overlapped with both of these offenses, insofar as it required an intent "*either* to permanently *or* temporarily deprive the owner thereof of his or her title to or possession of the vehicle." (*Id.*, subd. (a), italics added; see *Jaramillo*, at p. 755.)

In cases long predating Proposition 47, we had distinguished the so-called "theft form" of the offense for purposes of applying the common law rule forbidding dual

---

[3] In 1996, Penal Code section 499b was amended to remove motor vehicles from the scope of its prohibitions; section 499b now bars only the temporary use of a vessel, motorboat, or bicycle without the owner's permission. (See Stats. 1996, ch. 660, § 1, p. 3669.)

convictions for both stealing and receiving the same property. (See *People v. Garza* (2005) 35 Cal.4th 866, 876 (*Garza*); *Jaramillo, supra*, 16 Cal.3d at pp. 757–759.) We explained that section 10851 punishes the act of taking a car separately from the act of driving it after the theft is complete. It follows that "[a] person who violates section 10851[, subdivision ](a) by taking a car with the intent to permanently deprive the owner of possession, and who is convicted of that offense on that basis, cannot also be convicted of receiving the same vehicle as stolen property. [Citations.] If, on the other hand, a section 10851[, subdivision ](a) conviction is based on posttheft driving, a separate conviction under [Penal Code] section 496[, subdivision ](a) for receiving the same vehicle as stolen property is not precluded." (*Garza*, at p. 876.)

Proposition 47's reforms imparted new relevance to the long-standing distinction between what *Garza* termed the "theft and nontheft forms" of the section 10851 offense. (*Garza, supra*, 35 Cal.4th at p. 876.) Section 490.2, added by Proposition 47, provides that, "[n]othwithstanding [Penal Code] Section 487 or any other provision of law defining grand theft, obtaining any property by theft" valued at $950 or less "shall be considered petty theft and shall be punished as a misdemeanor." (Pen. Code, § 490.2, subd. (a).) This language, as we observed in *Page*, plainly covers grand theft of an automobile—a crime punished by Penal Code section 487—where the value of the vehicle is $950 or less. (*Page, supra*, 3 Cal.5th at p. 1182.) But Proposition 47 speaks more broadly. Under Proposition 47, other offenses consisting of "obtaining any property by theft," where the property is valued at $950 or less, are also punishable only as misdemeanors. (Pen. Code, § 490.2, subd. (a).)

Proposition 47 does not define the term "theft," but we have presumed the voters intended the term to bear the same meaning it had at common law:  "a taking with intent to steal the property—that is, the intent to permanently deprive the owner of its possession."  (*Page*, *supra*, 3 Cal.5th at p. 1182, citing *People v. Riel* (2000) 22 Cal.4th 1153, 1205.)[4]  It follows, as we held in *Page*, that those section 10851 convictions that are based on what we had previously referred to as the "theft form" of the offense—taking a car with intent to permanently deprive the owner of possession—may now be reduced to misdemeanors under Proposition 47, while those convictions that are based on the "nontheft" crime of driving a stolen vehicle after the theft is

---

[4]    This understanding admittedly is not one a casual reader would glean from the unadorned text of the Penal Code.  The code contains its own definition of the term "theft," and that definition is one that would facially seem to encompass every type of vehicle taking under section 10851.  Under Penal Code section 484, "Every person who shall feloniously steal, take, carry, lead, or drive away the personal property of another" is guilty of theft.  (*Id.*, subd. (a).)  But despite the facial breadth of section 484's language, we have long understood the definition of "theft" to track its definition at common law:  The thief must not only take property, but also must intend by doing so to permanently deprive the owner of possession.  (See *People v. Davis* (1998) 19 Cal.4th 301, 307; *People v. Brown* (1894) 105 Cal. 66, 68–70; but see *People v. Avery* (2002) 27 Cal.4th 49, 58 [common law intent requirement "is satisfied by the intent to deprive temporarily but for an unreasonable time so as to deprive the person of a major portion of its value or enjoyment"].)  Nothing we say here about the application of Proposition 47 to temporary vehicle takings in violation of section 10851 should be understood to alter the definition of theft under California law or the punishment of theft and related crimes outside the Proposition 47 context.

complete are not reducible to misdemeanors. (*Lara, supra*, 6 Cal.5th at pp. 1135–1137; *Page*, at pp. 1187–1189.)

The issue in this case arises because stealing a car and driving a stolen car are not the only two ways to violate section 10851. A section 10851 conviction that is based on unlawfully taking a vehicle *can*, but need not, be based on proof that the defendant intended to permanently deprive the owner of possession. The statute is, in fact, wholly indifferent to whether the defendant's intent was to steal the car or merely to borrow it; it punishes any vehicle taking "with intent *either* to permanently *or* temporarily deprive the owner thereof of his or her title to or possession of the vehicle," and "whether with *or* without intent to steal the vehicle." (§ 10851, subd. (a), italics added.) To the extent the statute can be violated based on the taking of a vehicle with intent merely to temporarily deprive the owner of possession—that is, without intent to steal the vehicle—the taking form of the section 10851 offense sweeps somewhat more broadly than the accepted definition of "theft."

The question we must decide is what consequence ought to flow from this mismatch. Do we understand Proposition 47 to now subdivide section 10851 vehicle-taking convictions into two new categories—misdemeanor permanent takings and felony temporary ones? Or do we instead understand Proposition 47 to apply to all unlawful takings of low-value vehicles with intent to deprive the owner of possession, regardless of whether the defendant has established an intent to take the vehicle permanently?

## III.

At least as to this narrow question, the parties agree: Proposition 47 does not require courts to draw a new distinction between permanent and temporary takings for purposes of section 10851. Defendant argues that an interpretation of Proposition 47's theft-reduction provision that would exclude section 10851 violators unable to prove they intended to steal the vehicle, rather than merely borrow it, would be "patently absurd and wholly inconsistent with the [initiative's] purposes." The Attorney General agrees: "The People can think of no plausible reason for treating section 10851 convictions for taking a vehicle without the intent to permanently deprive the owner of possession more harshly than those for taking a vehicle with the intent to permanently deprive the owner of possession." We agree with both parties that the voters who enacted Proposition 47 could not have intended to reconfigure the section 10851 offense to enact this senseless distinction.

As the parties emphasize, this narrow interpretation of Penal Code section 490.2 would mean that a person merely borrowing property without consent—in other words, a person harboring a *less* culpable intent than theft traditionally requires—would be treated more harshly than a person who actually intended to steal the property. Indeed, were we to construe Proposition 47 as applying to permanent but not temporary vehicle takings, a person like defendant who takes a low-value vehicle would be better off never returning it, as he would then be subject only to misdemeanor punishment.

Standing alone, that would be curious, but not dispositive. What makes the narrow interpretation particularly senseless is not merely that a temporary vehicle taking is less culpable than

a taking with intent to permanently deprive, but that—at least as far as section 10851 is concerned—the former is wholly included in the latter: A person who steals a vehicle with the intent to keep it, sell it or break it up for parts, and thus permanently deprive the owner of it, has *also* necessarily taken it with the intent to deprive the owner of possession for a shorter period of time.

Not so long ago, the architecture of the vehicle-takings laws made this hierarchy particularly plain. Before it was amended in 1996, Penal Code section 499b separately punished temporarily using a vehicle without permission and rendered it punishable only as a misdemeanor. (See fn. 3, *ante*.) We held that a charge of illegally taking and driving a vehicle under section 10851 necessarily included one of joyriding under Penal Code section 499b. (*People v. Barrick* (1982) 33 Cal.3d 115, 134–135.) Today, temporarily taking a vehicle without permission is no longer a separately defined misdemeanor offense under Penal Code section 499b; it is now punishable solely under section 10851. But it remains the case that proof of a permanent taking, at least in the section 10851 context, logically encompasses proof of a temporary one.

The overlap between the two is by design. As noted, section 10851 has never treated the intent to permanently deprive and the intent to temporarily deprive as mutually exclusive concepts. By its express application to taking or driving with the "intent either to permanently or temporarily deprive the owner thereof of his or her title to or possession of the vehicle" and "whether with or without intent to steal the vehicle," section 10851, subdivision (a) is meant to provide for liability regardless of how long the defendant meant to keep the vehicle from its owner. The evident purpose of this language

11

was to relieve prosecutors of the burden they had (and have), in a prosecution for auto theft under Penal Code section 487, to prove the intent to steal. (See *Jaramillo, supra,* 16 Cal.3d at p. 758 [jury could convict of § 10851 "simply because some doubt existed as to whether defendant intended to steal or *merely to temporarily deprive* [owners] of possession and to drive their vehicle" (italics added)]; *People v. Orona* (1946) 72 Cal.App.2d 478, 483–484 [crime of unlawful driving or taking has been committed if the defendant "took and drove the automobile belonging to [the owner], without his consent, with the intent to deprive him, *at least temporarily*, of the possession of the vehicle" (italics added)].) Nothing changed in this respect when the Legislature deleted references to automobiles from Penal Code section 499b; the amendment simply "streamline[d]" the law by removing duplicative provisions. (Stats. 1996, ch. 660, § 3, p. 3670; Sen. Com. on Crim. Proc., analysis of Assem. Bill No. 3170 (1995-1996 Reg. Sess.) as amended July 7, 1996, p. 3.)

The narrow interpretation of Penal Code section 490.2 as applied to section 10851 convictions would mean that a person who intends *only* to take the vehicle temporarily may be punished as a felon, while a person who *also* intends to take the vehicle permanently is subject only to misdemeanor punishment.[5] The utter illogic of this result effectively eliminates the narrow interpretation of Penal Code section 490.2 as a possible construction. As in other instances when a

---

[5] This is thus not a case involving legislation providing prosecutors with the discretion to charge precisely the same conduct under different statutes, and we do not address such a scenario here. (Cf. *People v. Wilkinson* (2004) 33 Cal.4th 821, 838–841.)

statute "blindly and literally applied" would lead to "obvious injustice and a perversion of the legislative purpose" (*People v. Oliver* (1961) 55 Cal.2d 761, 766), we must instead choose a reasonable interpretation that avoids absurd consequences that could not possibly have been intended. (See, e.g., *People v. Franco* (2018) 6 Cal.5th 433, 438 [applying this rule to interpret Prop. 47]; see also, e.g., *Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 [applying the same rule]; *Bruce v. Gregory* (1967) 65 Cal.2d 666, 674 [same].)

We confronted a similar set of issues in *People v. King* (1993) 5 Cal.4th 59, and *People v. Jenkins* (1995) 10 Cal.4th 234. In *King*, the relevant statutes "seem[ed] to provide that a person under the age of 18 who commits first degree murder and is tried as an adult may be committed to the California Youth Authority (CYA), while the same person who attempts but fails to commit the same crime is *not* eligible for CYA, but must instead be sentenced to prison." (*Id.* at pp. 62–63.) We construed the statutes to avoid this absurd result: "When the Legislature amended [the attempt statute] five years after making first degree murderers under the age of eighteen eligible for a CYA commitment, surely it did not intend to make attempted premeditated murderers that age ineligible for the same commitment. It did not intend a lesser included offense to have potentially harsher penal consequences than the greater offense." (*Id.* at p. 69.) And in *Jenkins,* we interpreted a statute awarding credits against a state prison sentence in order to avoid the result "that a recidivist sentenced under [Penal Code] section 667.7 would serve a shorter period of imprisonment than a person sentenced under an otherwise applicable nonrecidivist sentencing provision"—a result we also described as "absurd." (*Id.* at p. 247; see also *In re Eric J.* (1979) 25 Cal.3d 522, 537

[rejecting statutory interpretation under which a minor could be confined longer for commission of a felony and a misdemeanor than for commission of the same felony and another felony].)

Similar principles are at play here: When voters enacted Penal Code section 490.2, they could not possibly have intended thereby to split the atom of the section 10851 vehicle taking into two separate crimes—permanent taking and the included offense of temporary taking—with the latter punished more harshly than the former. Certainly, there is no indication in the statute's stated purpose or history that such was the voters' intent. The stated purpose of the initiative was to focus prison spending on "violent and serious offenses," while maximizing alternatives to prison for "nonserious, nonviolent crime." (Voter Information Guide, Gen. Elec. (Nov. 4, 2014) text of Prop. 47, § 2, p. 70 (Voter Information Guide).) To that end, the measure was designed to "[r]equire misdemeanors instead of felonies for nonserious, nonviolent crimes like petty theft and drug possession." (*Id.*, § 3, subd. (3), p. 70.) To accomplish these purposes, the initiative further directed, its terms are to be "broadly" (*id.*, § 15, p. 74) and "liberally" (*id.*, § 18, p. 74) construed. Consistent with these stated goals, the Legislative Analyst described the general operation of Proposition 47 as "reduc[ing] certain nonserious and nonviolent property and drug offenses from wobblers or felonies to misdemeanors." (Voter Information Guide, *supra*, analysis of Prop. 47 by Legis. Analyst, p. 35.) The official argument in favor of the initiative measure promised it would "[s]top[] wasting prison space on petty crimes" by changing "low-level nonviolent crimes such as simple drug possession and petty theft from felonies to misdemeanors." (Voter Information Guide, *supra*, argument in favor of Prop. 47, p. 38.)

Nothing in these materials suggests the voters actually intended to carve up a heretofore indivisible property offense into two separate crimes of misdemeanor permanent theft and felony (or wobbler) temporary taking. On the contrary: when the vehicle falls within the low-value class of property targeted by Proposition 47, its taking is by any account a "nonviolent crime[] like petty theft" (Voter Information Guide, *supra*, text of Prop. 47, § 3, subd. (3), p. 70), a "nonserious and nonviolent property . . . offense[]" (Voter Information Guide, *supra*, analysis of Prop. 47 by Legis. Analyst, p. 35) and a "low-level nonviolent crime[]" (Voter Information Guide, *supra*, argument in favor of Prop. 47, p. 38). If anything, to exclude a section 10851 conviction based on the taking of a low-value vehicle because the defendant's intent was *not culpable enough* would contravene Proposition 47's overarching purpose of reducing the punishment for low-level nonviolent property crimes.

More to the point, we see no plausible reason why any reasonable voter or legislator might have intended such a result. As noted, both sides agree that no reason exists for the voters to create such an irrational distinction, and we can imagine none.

## IV.

So far we have described common ground between the parties. But the agreement is narrower than first appears. The Attorney General argues that even though a person who violates section 10851 by committing what he calls a "pure taking" of a vehicle is eligible for Proposition 47 relief, a person who actually *drives* the vehicle at any point is not. The Attorney General illustrates the point with an example from the now-defunct MTV series *Punk'd*, in which a prankster towed the celebrity victim's car as part of an "elaborate hoax." As the Attorney

General sees it, the MTV prankster who has arranged for towing services has committed a misdemeanor (assuming the car is of the requisite low value); for virtually anyone else, the crime remains punishable as a felony.

The Attorney General's theory appears to rest on the premise that for purposes of section 10851, taking and driving a vehicle are mutually exclusive categories of conduct. This manner of parsing the section 10851 offense is contrary to both experience—which tells us that cars are commonly taken by driving them away—and our unsurprising observation in *Page* that "vehicle theft often involves driving the vehicle." (*Page, supra,* 3 Cal.5th at p. 1188.) The distinction *Page* found relevant for Proposition 47 purposes was not between taking and driving, as such. Rather, *Page* held the availability of relief under Proposition 47 turns on the distinction we had previously drawn in *Garza* between taking—whether accomplished by driving or by other means—and driving a stolen car after its theft is complete, i.e., posttheft driving. (*Page,* at pp. 1183–1184, 1188–1189; accord, *Lara, supra,* 6 Cal.5th at p. 1136; see *Garza, supra,* 35 Cal.4th at p. 876.) The distinction between taking a vehicle by driving it away and taking a vehicle by other means is not one that has ever had any significance under section 10851, and the Attorney General offers no sound basis for believing Proposition 47 was intended to distinguish among vehicle takings on this basis.

## V.

Our holding today does not mean that Proposition 47, properly read, necessarily covers every offense that one might believe to be less serious than petty theft or simple drug possession. We are not at liberty to rewrite the initiative to

enact our own view of provisions that might have improved it, or that would have better vindicated its stated purpose of reducing punishment for low-level crimes, and we do not do so here. (See *People v. Martinez* (2018) 4 Cal.5th 647, 653–655.) Nor should our holding be taken to suggest that the term "theft," in general, carries anything other than its settled meaning.

Our holding today is narrow, and specific to the interaction between Proposition 47 and the section 10851 offense. We hold only that to interpret Proposition 47 to split the section 10851 taking offense into two offenses— misdemeanor taking with intent to permanently deprive the owner of the vehicle, and felony taking with intent to do so only temporarily—is so patently illogical that we cannot imagine any plausible reason why voters might have intended that result. The elements of taking an automobile *without* the intent to permanently deprive the owner of its possession are included in taking *with* such intent. While the initiative's drafters did not include any provisions aimed expressly at violations of section 10851, we determined in *Page* that the initiative was intended to apply to thefts of low-value vehicles prosecuted under that section. We conclude here that it was also intended to ameliorate the punishment for low-value vehicle takings committed without the intent to permanently deprive.

It certainly would have made our task easier had voters expressly instructed that all vehicle takings under section 10851 are to be treated as equivalent to vehicle theft for purposes of Proposition 47's theft-reduction provision. But Proposition 47 does not speak in this degree of granular detail, so we must discern the voters' intent given the other tools at hand. Confronted with comparable circumstances, we have not hesitated "to find by implication provisions in a statute which

17

are not within the scope of the statutory language taken literally." (*Bruce v. Gregory*, *supra*, 65 Cal.2d at p. 674; see also *In re Michele D.* (2002) 29 Cal.4th 600, 606 [that legislators "may not have considered every factual permutation" for statute's application does not mean application to particular conduct is beyond legislative intent].) It is, after all, "our role to make sense rather than nonsense out of the *corpus juris*." (*West Virginia Univ. Hospitals, Inc. v. Casey* (1991) 499 U.S. 83, 101.) The narrow interpretation of Penal Code section 490.2, as both sides agree, is one that would make nonsense of the law. We therefore agree with the parties that it is an interpretation we must reject.

Under our holdings in *Page*, *Lara*, and this case, Proposition 47's substantive effect on section 10851 can be summarized as follows: Except where a conviction is based on posttheft driving (i.e., driving separated from the vehicle's taking by a substantial break), a violation of section 10851 must be punished as a misdemeanor theft offense if the vehicle is worth $950 or less. In pre-Proposition 47 cases, where the defendant seeks resentencing or redesignation under Penal Code section 1170.18, the defendant bears the burden of proof to show the relevant facts; in cases arising, tried, or sentenced after Proposition 47 came into effect, the People bear that burden. (*Lara*, *supra*, 6 Cal.5th at pp. 1135–1137; *Page*, *supra*, 3 Cal.5th at pp. 1187–1189.)

## VI.

The superior court's denial of resentencing for defendant's section 10851 conviction cannot be upheld either on the ground that Proposition 47 is categorically inapplicable to such convictions or on the ground that defendant's conviction was not

for theft because he lacked the intent to permanently deprive the vehicle's owner of its possession. We will therefore reverse the judgment of the Court of Appeal affirming the superior court's denial of defendant's resentencing petition. The parties dispute whether a remand to the superior court is required for a determination of the vehicle's value. The superior court made no finding as to whether the vehicle was worth $950 or less, and while the Court of Appeal majority's factual recitation states its value as $500 (a statement supported by the police report), the concurring and dissenting justice asserts defendant "failed to meet his burden of establishing the vehicle he took was valued under $950." As the valuation question is not within the issues we ordered briefed, we leave it for resolution by the Court of Appeal on remand.

The judgment of the Court of Appeal is reversed and the matter remanded to that court for further proceedings consistent with this opinion.

**KRUGER, J.**

**We Concur:**

**CANTIL-SAKAUYE, C. J.**
**CHIN, J.**
**CORRIGAN, J.**
**LIU, J.**
**CUÉLLAR, J.**
**GROBAN, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** People v. Bullard

_____

**Unpublished Opinion** XXX NP opn. filed 12/12/16 – 4th Dist., Div. 2
**Original Appeal**
**Original Proceeding**
**Review Granted**
**Rehearing Granted**


_____

**Opinion No.** S239488
**Date Filed:**  March 23, 2020

_____

**Court:**  Superior
**County:**  San Bernardino
**Judge:**  John P. Vander Feer


_____

**Counsel:**

Richard L. Fitzer, under appointment by the Supreme Court, for Defendant and Appellant.

Kamala D. Harris and Xavier Becerra, Attorneys General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland and Lance Winters, Assistant Attorneys General, Michael R. Johnsen and Samuel P. Siegel, Deputy Solicitors General, Barry Carlton and Meagan J. Beale, Deputy Attorneys General, for Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Richard L. Fitzer
Attorney at Law
6285 East Spring Street, 276N
Long Beach, CA 90808
(562) 429-4000

Samuel Siegel
Deputy Solicitor General
1300 I Street
Sacramento, CA 95814
(916) 210-6269