Filed 10/22/25  P. v. Sobbe CA5

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>CASEY PATRICK SOBBE,<br><br>    Defendant and Appellant. | F088724<br><br>(Super. Ct. No. 23CM2517)<br><br>**OPINION** |

## <u>THE COURT</u>[*]

APPEAL from a judgment of the Superior Court of Kings County.  Melissa R. Lucero D'Morias, Judge.

Gordon B. Scott, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Eric L. Christoffersen and Amanda D. Cary, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]    Before Detjen, Acting P. J., Peña, J. and Ellison, J.[†]

[†]    Retired judge of the Fresno Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Defendant and appellant Casey Patrick Sobbe (defendant) was convicted by a jury of evading a peace officer, felony driving a vehicle without consent, felony receiving a stolen vehicle, misdemeanor hit and run resulting in property damage, and misdemeanor possession of burglar's tools. Defendant was sentenced to a total term of five years, four months. On appeal, defendant contends that: (1) he was improperly convicted of both stealing a vehicle and receiving the same vehicle as stolen property; (2) his felony conviction for stealing a vehicle must be reduced to a misdemeanor because there was no evidence of the vehicle's value; and (3) the abstract of judgment must be corrected to reflect that the count 3 conviction was for receiving a stolen vehicle and not for vandalism. We will remand this matter to correct the abstract but otherwise affirm.

## PROCEDURAL BACKGROUND

On May 6, 2024, the Kings County District Attorney filed a six-count amended information that charged defendant with: evading a peace officer (Veh. Code, § 2800.2, subd. (a); count 1); felony driving or taking a vehicle without consent (Veh. Code, § 10851, subd. (a) (section 10851(a)); count 2); felony receiving a stolen vehicle (Pen. Code, § 496d, subd. (a) (section 496d(a)); count 3); felony vandalism (Pen. Code, § 594, subd. (a); count 4); misdemeanor hit and run resulting in property damage (Veh. Code, § 20002, subd. (a); count 5); and misdemeanor possession of burglar's tools (Pen. Code, § 466; count 6). All offenses were alleged to have occurred on or about September 10, 2023. With respect to the first four counts, the amended information alleged that defendant had a strike prior (Pen. Code, §§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d)), and alleged a number of circumstances in aggravation.

Also on May 6, 2024, a jury trial commenced.

On May 7, 2024, the trial ended when the jury reached a verdict. Prior to the jury returning a verdict, the trial court granted defendant's motion to dismiss the count 4 vandalism charge. The jury found defendant guilty on the five remaining counts. In a

2.

bifurcated proceeding, the court found true the prior strike allegations and found true many aggravating circumstances.

On July 31, 2024, defendant filed a motion to strike the strike prior.

On September 24, 2024, the trial court denied defendant's motion to strike. The court also imposed a total sentence of five years, four months as follows: on count 1, four years (the middle term doubled by the strike prior); in count 2, 16 months consecutive to count 1 (one-third of the middle term doubled by the strike); on count 3, 16 months stayed pursuant to Penal Code section 654 (one-third of the middle term doubled by the strike prior); on count 5, 180 days concurrent to count 1; and count 6, 180 days concurrent to count 1.

On September 25, 2024, defendant filed a notice of appeal.

## FACTUAL BACKGROUND

*Defendant's Arrest*

On September 10, 2023, the Hanford Police Department received information from a Flock camera system[1] that a reportedly stolen truck was near an intersection within Hanford. At 12:48 a.m., the Hanford Police dispatched two separate patrol vehicles, one driven by officer Ernest Escalera and the other driven by officer Wayne Shoemake, to check on the stolen truck. Escalera located the stolen truck and attempted to conduct a traffic stop. Escalera could see that there was one person in the truck. After the truck pulled to the side of the road and Escalera exited his patrol vehicle, the truck sped away. The driver was speeding (reaching speeds of between 60 and 70 miles per hour in areas with 25 to 35 miles per hour speed limits) and ran numerous stop signs in his attempt to escape from Escalera. The driver eventually lost control of the truck and crashed through a residential fence and struck a parked car. The driver then exited the

---

[1] The Flock camera system has the ability to read license plate numbers and detect stolen vehicles.

3.

truck and ran away.  Escalera tried to chase after the driver but lost sight of him for two or three minutes.

Shoemake was traveling behind Escalera during the pursuit.  However, after the driver crashed the stolen truck, Shoemake took a different route and arrived on the scene from the opposite direction between 30 seconds and one minute after the driver crashed the truck.  Shoemake did not see anyone running when he arrived.  However, a resident of the area waved at Shoemake and pointed to a parked lifted truck.  Under the lifted truck, Shoemake saw someone who appeared to be hiding.  The individual under the lifted truck was sweating, had dirt on him, and seemed scared and to be "in some sort of state of panic."  Shoemake took the individual, who was later identified as defendant, into custody and turned him over to Escalera.  Escalera recognized defendant as the driver of the stolen truck who had fled on foot.

Escalera arrested defendant.  Escalera searched defendant and found three shaved vehicle keys[2] in defendant's pocket.  A screwdriver and more shaved keys were also found in the stolen truck.  The steering column of the truck was damaged, and wires were exposed.  The condition of the steering column was such that the truck could be started with a screwdriver.

*Trial*

*Testimony of Luis Ibarra*

At trial, Luis Ibarra testified that he was the registered owner of the stolen truck and that he had not given anyone in the courtroom permission to drive it.  The prosecutor asked Ibarra, "Now, prior to—on or about September 10th, 2023, did you previously report your [truck] as stolen?"  Ibarra replied, "Yes."  The prosecutor then asked, "And on September 10th, 2023, was your [truck], in fact, stolen?"  Ibarra replied, "Yes."  After

---

[2]     Shaved keys are filed down so they can be used to start vehicles with a key ignition and are considered burglary tools.

Ibarra confirmed that he still had the keys in his possession when the truck was stolen, the prosecutor asked, "And just to clarify, you reported your [truck] as stolen before September 10th, 2023?" Ibarra asked the prosecutor to repeat the question, and the prosecutor asked, "You reported your [truck] as stolen prior to September 10th, 2023?" Ibarra answered simply, "Yes."

*Jury Instructions*

In part, the jury was given CALCRIM Instruction No. 1820 (Instruction 1820), involving count 2 for taking or driving a vehicle without permission in violation of section 10851(a). Instruction 1820 as given to the jury read in full:

"The defendant is charged in Count 2 with unlawfully taking or driving a vehicle in violation of … section 10851(a).

"To prove that the defendant is guilty of this crime, the People must prove that:

1. The defendant drove someone else's vehicle without the owner's consent;

AND

2. When the defendant drove the vehicle, he intended to deprive the owner of possession or ownership of the vehicle for any period of time.

"A *taking* requires that the vehicle be moved for any distance, no matter how small."

*Closing Arguments*

During his closing argument, the prosecutor briefly identified the charges pending against defendant. With respect to section 10851(a), the prosecutor told the jury: "We have Count 2, [section] 10851(a), driving a vehicle without the consent of that owner." After briefly describing the remaining counts and discussing count 1 (evading) in more depth, the prosecutor made the following statements about count 2:

"Let's move to Count 2, [section] 10581(a). This is the one for driving a stolen vehicle. Two elements really in particular. The defendant drove someone else's vehicle without the owner's consent. We know the defendant drove the vehicle because he was found near it and we know he fled. I'll get into that further on. But we also know that he didn't have consent. Why? We had … Ibarra testify. I had him look at everyone in the room. You see anyone here you ever gave consent to drive? No. Did you ever know anyone by [defendant's name?] He said no, I never gave that person consent. So we know that that's been met.

"Let's go to number 2. The defendant drove the vehicle and he intended to deprive the owner of possession or ownership of the vehicle for any period of time. How do we know that? Well, the defendant didn't have the victim's keys. He ended up having all the shaved keys. He was evading arrest. He was trying to get away with it. That's how we know that. He wasn't in it, oh, I found a stolen vehicle. I'm going to turn it into the police station. We know that he intended to."

After describing other counts to the jury, the prosecutor argued, "let's go into why it's the defendant, because, again, the issue really here is whether it's the defendant or not and whether he committed it." One of the reasons given by the prosecutor for concluding that defendant was the person who committed the charged offenses was that defendant "was sweaty, covered in dirt, grass, and out of breath. I wonder why? Because he stole a vehicle and was running. And, again, watch the body camera to see how the other squad car was there. There's no one else there." The prosecutor also explained that defendant "had a couple of [shaved] keys in his pocket and also had several on the floorboard. Why? Because he wants to see which one works with the ignition that he's trying to steal."

Defense counsel's closing argument did not address the elements of any charged offense, including count 2. Instead, defense counsel attacked Escalera's identification of defendant as the person who was driving the stolen truck.[3]

---

[3] There was some discrepancy between Escalera's testimony and his dispatch description of defendant. Dispatch records indicate that Escalera described defendant as wearing black shorts and a grey shirt and having a shaved head. Escalera's trial

In rebuttal, the prosecutor addressed only the arguments made by defense counsel. The prosecutor did not discuss count 2 in any way.

<b><u>DISCUSSION</u></b>

**I.      PROPRIETY OF THE COUNT 3 CONVICTION**

**A.      Parties' Arguments**

Defendant argues he was convicted of taking/stealing the truck.  Defendant contends the undisputed evidence shows that the truck had just been stolen and no place of safety had been reached.  Specifically, defendant argues that Ibarra testified the truck was stolen on September 10, 2023, Escalera was notified of the theft of the truck at 12:48 a.m. on September 10, 2023, defendant was evading Escalera, defendant was found with shaved keys, and shaved keys and a screwdriver were still in the truck, all of which show that the truck was still being stolen.  Defendant also argues the prosecutor told the jury that defendant had stolen the truck, and Instruction 1820 did not tell the jury whether they were considering the evidence for a taking offense or a posttheft driving offense. Because the evidence shows an ongoing theft, defendant argues that he cannot be convicted of both possessing a stolen vehicle and stealing that vehicle, and that the count 3 conviction for receiving the stolen truck must be stricken.

The People argue the entirety of the record (the information, the jury instructions, and the prosecutor's closing argument) demonstrates that defendant's conviction for receiving the stolen truck is permissible because he was convicted of posttheft driving. The People argue the testimony established that the truck was stolen prior to September 10, defendant drove the truck without Ibarra's consent, and defendant was the driver who was trying to flee from Escalera.  The People argue the evidence regarding shaved keys and the prosecutor's statements relating to defendant stealing the truck were

_____

testimony described defendant as wearing a grey or black shirt and dark pants and having short black hair.

7.

isolated and were only meant to show identity, they did not change the fact that the prosecutor was pursuing a posttheft driving theory.

## B. Legal Standards

### 1. Sufficiency of the Evidence

When the sufficiency of the evidence is challenged, courts " 'review the whole record to determine whether *any* rational trier of fact could have found the essential elements of the crime or special circumstances beyond a reasonable doubt. [Citation.]' " (*People v. Penunuri* (2018) 5 Cal.5th 126, 142 (*Penunuri*); *People v. Manibusan* (2013) 58 Cal.4th 40, 87.) Reviewing courts must view the evidence " 'in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence. [Citation.]' " (*Penunuri*, at p. 142; *Manibusan*, at p. 87.) Stated differently, "[o]ur command as a reviewing court in evaluating a sufficiency of the evidence claim is to consider the actual evidence before the jury and reasonable inferences favorable to the prosecution that the jury could have drawn from that evidence." (*People v. Collins* (2025) 17 Cal.5th 293, 304, fn. 2.) We resolve all conflicting inferences and credibility findings in favor of the verdict. (*People v. Collins* (2021) 65 Cal.App.5th 333, 344 (*Collins*); *People v. Autry* (1995) 37 Cal.App.4th 351, 358.) The record must reveal substantial evidence, which is " 'evidence that is reasonable, credible, and of solid value,' " to support the verdict " 'such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' " (*Penunuri*, at p. 142; *Manibusan*, at p. 87.) " 'A reversal for insufficient evidence "is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support' " the jury's verdict.' " (*Penunuri*, at p. 142; *Manibusan*, at p. 87.) As a result, a defendant challenging the sufficiency of the evidence to support a conviction bears a heavy burden. (*People v. Powell* (2011) 194 Cal.App.4th 1268, 1287.)

## 2. Dual Convictions for Stealing and Receiving a Vehicle

Section 10851(a) prohibits the theft or unlawful taking of a vehicle, but also prohibits a person from driving a vehicle without the owner's consent as long as the person has the intent to either permanently or temporarily deprive the owner of possession, irrespective of whether the person also has the intent to steal the vehicle. (§ 10851(a); *People v. Page* (2017) 3 Cal.5th 1175, 1182; *People v. Garza* (2005) 35 Cal.4th 866, 871, 876.)  However, in California, a person may not be convicted of both stealing property and receiving that property.  (Pen. Code, § 496, subd. (a); *People v. Ceja* (2010) 49 Cal.4th 1, 4.)  Through operation of this prohibition, a person may not be convicted of both unlawfully taking a vehicle under section 10851(a) and receiving that vehicle under section 496d(a).  (See *People v. Jackson* (2018) 26 Cal.App.5th 371, 380, fn. 10; *People v. Calistro* (2017) 12 Cal.App.5th 387, 395 (*Calistro*).).  Because section 10851(a) separately prohibits the acts of taking a vehicle and driving a vehicle, a defendant who steals a vehicle and continues to drive the vehicle after the theft is complete commits an offense under section 10851(a) separate from the theft of the vehicle.  (*Garza*, at p. 880; *Jackson*, at p. 377; *Calistro*, at p. 395.)  Thus, a conviction under both section 496d(a) and section 10851(a) is permissible as long as the conviction under section 10851(a) is for posttheft driving, since posttheft driving is not theft/stealing.  (*People v. Lara* (2019) 6 Cal.5th 1128, 1136; *Garza*, at p. 871; *Calistro*, at p. 395.)  The theft of a vehicle may be considered complete, and a conviction for posttheft driving may be possible, when there is a " ' "substantial break" ' " between the act of stealing and the act of driving.  (*Lara*, at p. 1136; *Page*, at p. 1188.)  Courts have recognized that a theft may be considered complete when:  the driving is an act distinct from the theft, the driving is for purposes that are not connected with the original theft, the driving is no longer part of a continuous journey away from the site of the theft, when the driving is not part of the escape from the scene of the theft, or when the thief reaches a place of safety.  (*Calistro*, at p. 395 [and cases cited therein].)

9.

### C.    Analysis

#### 1.    Nature of the Conviction

As stated above, a conviction under section 10851(a) can be based on two separate acts, the theft of a vehicle or the posttheft driving of a vehicle. We agree with the People that the record demonstrates defendant was convicted of posttheft driving.

First, the amended information under count 2 alleged that defendant drove Ibarra's truck without consent and with the intent to deprive Ibarra of the title to or possession of the truck. The information did not allege that defendant took or stole Ibarra's truck. Also, the section 10851(a) offense under count 2 was alleged to be a felony. A taking/theft section 10851(a) offense is a felony only if the vehicle that was taken was worth more than $950. (*People v. Bullard* (2020) 9 Cal.5th 94, 110 (*Bullard*).) The amended information did not allege any value for the truck. Therefore, because the amended information alleged only driving without consent, and alleged that the section 10851(a) offense was a felony but did not allege a dollar amount, the amended information alleged only a section 10851(a) posttheft driving offense.

Second, the jury instructions list only the elements of a posttheft driving offense. Instruction 1820 alleged that the People must prove only two elements: (1) that defendant drove a vehicle without the owner's consent; and (2) that when defendant drove the vehicle, he did so with the intent to deprive the owner of possession or ownership of the vehicle for any period of time. Neither of these elements require the People to prove that defendant took Ibarra's truck. Further, even though the section 10851(a) offense was alleged as a felony, Instruction 1820 did not require the People to prove that the value of the truck exceeded $950. The value of a vehicle is not an element of a posttheft driving felony offense. (*Bullard*, *supra*, 9 Cal.5th at p. 101.) Finally, the version of Instruction 1820 in effect at the time of trial contained two versions, one for "taking with intent to deprive" (Alternative A) and one for "posttheft driving" (Alternative B). Instruction 1820 gave the Alternative B language for

10.

posttheft driving. For these reasons, Instruction 1820 is only a posttheft driving instruction.

Finally, during his closing argument, the prosecutor told the jury that count 2 was "the one for driving a stolen vehicle." The prosecutor did not say that count 2 was "the one for taking, stealing, or theft of a vehicle." The prosecutor then explained how the two elements listed by Instruction 1820 were met. The facts relied on by the prosecutor were that defendant drove the truck, Ibarra testified that he gave no one in the courtroom permission to drive the truck, and defendant had shaved keys and was evading the police. These facts are sufficient to meet the two elements identified in Instruction 1820. Therefore, the prosecutor was arguing a posttheft driving theory to the jury.

Defendant argues that two statements made by the prosecutor demonstrate that a taking/stealing theory was actually pursued by the prosecution. Specifically, defendant points out that the prosecutor stated: "[Defendant] was sweaty, covered in dirt, grass, and out of breath. I wonder why? Because he stole a vehicle and was running." "He had a couple of keys in his pocket and also had several on the floorboard. Why? Because he wants to see which one works with the ignition that he's trying to steal." We are not convinced that these statements demonstrate that the prosecutor pursued a taking theory.

The prosecutor made both statements in the context of the driver's identity, and the statements were made to offer an explanation as to why defendant appeared sweaty and dirty and why defendant possessed shaved keys. Neither statement was made in specific reference to count 2 or Instruction 1820, and neither statement purported to meet an element listed in Instruction 1820. Rather, and again, with respect to count 2, the prosecutor specifically identified the offense at issue as one for "driving" and identified the first element of that offense as driving without consent. The fact that the prosecutor made two isolated statements in order to address identity and motivation outside of the context of count 2 is not enough to change or override the theory alleged in the information, the theory conveyed in Instruction 1820, and the closing argument that was

11.

made in specific reference to count 2. (*Calistro*, *supra*, 12 Cal.App.5th at p. 402 ["Although the prosecutor occasionally referred to [the] defendant's taking of the car, she elected the *driving* theory during argument when she argued that the first element of … section 10851(a) was satisfied by [the] defendant's driving of the car."].) We cannot conclude that the prosecutor ever pursued a taking/theft theory under section 10851(a).

In sum, defendant was convicted of posttheft driving under section 10851(a).

### 2. Sufficiency of the Evidence

Viewing the evidence in the light most favorable to the verdict, and making all reasonable inferences in favor of the verdict (*Penunuri*, *supra*, 5 Cal.5th at p. 142), we are satisfied that substantial evidence supports the conclusion that defendant was apprehended and had been driving at a time in which the theft of the truck had ended. Police were dispatched to investigate the stolen truck at 12:48 a.m. on September 10, 2023, and defendant was apprehended shortly thereafter following a high speed chase. Ibarra testified that he reported that his truck was stolen before September 10.[4] If the truck was stolen before September 10, that means by the time Escalera attempted to stop defendant, the truck had been stolen for a minimum of about 50 minutes. Prior to 12:48 a.m., there is no evidence that the stolen truck had been detected earlier by the Flock camera system, and there was no evidence that any other police unit had attempted to apprehend the stolen truck prior to Escalera. Further, there was no testimony that defendant had been driving the stolen truck in an evasive manner or speeding *prior* to Escalera's attempt to stop him sometime after 12:48 a.m. This indicates that defendant was not fleeing from the original theft. Given the framework for evaluating sufficiency of the evidence challenges (*Penunuri*, *supra*, 5 Cal.5th at p. 142; *Collins*, *supra*, 65

---

[4] The first question about when Ibarra reported the truck as stolen was somewhat ambiguous since it was framed in terms of "on or about." However, the prosecutor subsequently asked a clarifying question and expressly asked whether Ibarra had reported the truck stolen prior to September 10, to which Ibarra answered, "Yes."

Cal.App.5th at p. 344), we are satisfied that, without being pursued by police, driving in a normal fashion within a city after the lapse of (at a minimum) 50 minutes from a theft is substantial evidence that the theft had ended and defendant was engaged in posttheft driving.

Defendant contends the evidence establishes that he was still in the process of taking/stealing the truck because Ibarra testified that the truck was stolen on September 10, shaved keys were found on him and within the truck, and he tried to escape from Escalera. We are not satisfied that these points establish as a matter of law that the theft had not yet ended.

Although certainly noteworthy, the fact that shaved keys were found on defendant and in the truck is not dispositive as it could mean any number of things. That fact could mean that defendant simply still had the keys on him, even though the theft of the truck had been fully accomplished. It could also mean that defendant was returning the shaved keys to someone because he had completed his theft of the truck. Theoretically, it could also mean that defendant was looking for a different vehicle to steal because he could only drive the stolen truck by using a screwdriver to start the ignition. Therefore, the fact that shaved keys were found on defendant and in the truck does not compel the conclusion that defendant was still in the act of stealing the truck at 12:48 a.m. on September 10.[5]

As for Ibarra's statement that the truck was stolen on September 10, that statement is ambiguous. The statement could mean that the truck was actually taken and thus, stolen sometime within the first 48 minutes of September 10. It could also mean that on

---

[5] Similarly, the fact that the screwdriver was still in the truck and used to start the truck does not compel a finding that the theft was ongoing. The actual keys to start the truck were still in Ibarra's possession. Thus, defendant would need a screwdriver to start the truck irrespective of how long defendant may have been in possession of the truck. That is, the screwdriver would be used to start the truck both when it was immediately stolen and every time thereafter, including all times when the theft had been completed.

13.

September 10, the truck could still be classified as stolen or still be considered to be stolen. If we were to accept the former meaning, there would be an inconsistency with Ibarra's testimony that he had reported the truck stolen prior to September 10. Specifically, the truck would not have been reported stolen sometime *prior to* September 10 if the truck was actually physically taken and stolen *on* September 10. Because we view the evidence in the light most favorable to the verdict, and resolve all conflicts in favor of the verdict (*Collins*, *supra*, 65 Cal.App.5th at p. 344), we interpret Ibarra's testimony to mean that, as of September 10, the truck was classified as, or had the status of being, still stolen. Such an interpretation does not compel a conclusion that defendant was still in the process of stealing the truck around 12:48 a.m. on September 10.

Finally, defendant argues that his evasive driving and attempts to escape from Escalera showed that the theft was still ongoing. However, defendant's evasive driving could reflect a number of things. It could reflect that he was fleeing because he knew that he was in possession of a vehicle that had been previously stolen. It could also reflect that he knew that he had stolen the truck, but that the theft had been fully accomplished at an earlier point in time. While the fact that defendant engaged in evasive driving and attempted to flee from Escalera certainly reflects knowledge of guilt and a desire to avoid capture, it does not per se indicate that the theft of the truck was still ongoing.

In sum, the evidence does not compel the conclusion that the theft of the truck was incomplete or ongoing when defendant was apprehended. Rather, there is substantial evidence to support the conclusion that the theft had been completed by the time Escalera attempted to stop defendant.[6] (*Penunuri*, *supra*, 5 Cal.5th at p. 142; *Collins*, *supra*, 65

---

[6] The People also concede that Instruction 1820 was incomplete because it did not reference "posttheft driving," but argue that the error was harmless. Defendant did not make this argument in his opening brief, and his reply brief does not adopt or even address this argument. Therefore, there is no indication that defendant either agrees with or wishes to pursue the People's concession. We are not bound by the People's

Cal.App.5th at p. 344; *Calistro*, *supra*, 12 Cal.App.5th at p. 402.) Therefore, because substantial evidence supports defendant's conviction for posttheft driving, defendant was lawfully convicted of receiving the stolen truck in violation of section 496d(a). (*Calistro*, at p. 395.) We will not strike the section 496d(a) conviction. (*Ibid*.)

## II. SUFFICIENCY OF THE EVIDENCE FOR A SECTION 10851(a) TAKING

Defendant argues that he was convicted of taking Ibarra's truck, but because there was no evidence regarding the value of the truck, the conviction can only be a misdemeanor. However, as explained above, we have determined that defendant was convicted of posttheft driving, not taking. The value of Ibarra's truck is not an element of a section 10851(a) posttheft driving offense. (*Bullard*, *supra*, 9 Cal.5th at p. 101.) Therefore, because the value of the truck is irrelevant to a posttheft driving offense, there is no basis to reduce defendant's section 10851(a) conviction to a misdemeanor.

## III. CORRECTION OF THE ABSTRACT OF JUDGMENT

The abstract of judgment incorrectly identifies defendant's count 3 conviction as one for vandalism under Penal Code section 594. The parties agree that we should remand this matter for the trial court to correct the abstract to reflect that the count 3 conviction was for receiving a stolen vehicle under section 496d(a). We agree with the parties and will remand this matter so that the abstract can be corrected.

---

concession. (*People v. Vivar* (2021) 11 Cal.5th 510, 524; *Desny v. Wilder* (1956) 46 Cal.2d 715, 729; *People v. Kimble* (2024) 99 Cal.App.5th 746, 749.) In the absence of an actual argument by defendant that adopts the People's position, we will confine our analysis to the issues actually raised and pursued by defendant, which are that there is no evidence of a substantial break between the theft and apprehension and that the evidence undisputably shows that the theft of the truck was ongoing. We express no opinion about the substance of the People's concession and argument.

**DISPOSITION**

This matter is remanded to the trial court to correct the abstract of judgment to reflect that defendant's count 3 conviction was under section 496d(a) for receiving a stolen vehicle. The judgment is otherwise affirmed.