Filed 5/18/21  P. v. Thomas CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>RODERICK THOMAS,<br><br>        Defendant and Appellant. | A159153<br><br>(San Francisco City & County<br>Super. Ct. No. 13024835,<br>SCN00221214-02) |

Defendant Roderick Thomas was convicted of felony murder following a jury trial.  He appealed that conviction and it was reversed by this court.  Defendant was again charged with felony murder, but he pled guilty to voluntary manslaughter rather than have a second trial.  He now seeks resentencing of his manslaughter conviction pursuant to Penal Code[1] section 1170.95.  The trial court denied his petition.  On appeal, defendant argues he is entitled to resentencing under section 1170.95 because he was convicted of felony murder and he " 'accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder.' "  We disagree.

---

[1] All statutory references are to the Penal Code.

## I. BACKGROUND

A jury convicted defendant of burglary and first degree murder in violation of the felony-murder statute. The facts of the underlying crime are recounted in our prior opinion. (*People v. Thomas* (Feb. 29, 2016, A142916) [nonpub. opn.].) This court reversed his conviction for issues unrelated to this appeal. (*Ibid.*)

On remand, defendant was again charged with first degree murder. The information was amended to include a charge of voluntary manslaughter, and defendant pled guilty to that charge. The court sentenced defendant to 19 years in state prison based on the upper term limit and two enhancements.

In 2019, defendant filed a petition for resentencing under section 1170.95. The trial court initially ruled defendant had stated a prima facie case for relief, and continued the matter to set a date for an evidentiary hearing. Following reassignment pursuant to section 1170.95, subdivision (b)(1), the trial court concluded defendant did not state a prima facie case for relief and denied the petition without an evidentiary hearing. The court explained defendant had not been convicted of murder and section 1170.95 did not extend to defendant's manslaughter conviction. In so holding, the court specifically cited recent authority from various Courts of Appeal. Defendant timely appealed.

## II. DISCUSSION

### A. Senate Bill No. 1437 and Section 1170.95

"Senate Bill No. 1437 [(2017–2018 Reg. Sess.)], which took effect on January 1, 2019, was passed ' "to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual

killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." ' " (*People v. Cooper* (2020) 54 Cal.App.5th 106, 113, review granted Nov. 10, 2020, S264684.) "The bill redefined malice under section 188 to require that the principal acted with malice aforethought. Now, '[m]alice shall not be imputed to a person based solely on his or her participation in a crime.' (§ 188, subd. (a)(3).)" (*People v. Turner* (2020) 45 Cal.App.5th 428, 433 (*Turner*).)[2] The bill also amended section 189 to provide that a defendant who was not the actual killer and did not have an intent to kill is not liable for felony murder unless he or she "was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2." (§ 189, subd. (e)(3).)

Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437) also enacted section 1170.95, which authorizes "[a] person convicted of felony murder or murder under a natural and probable consequences theory [to] file a petition with the court that sentenced the petitioner to have the petitioner's murder conviction vacated and to be resentenced on any remaining counts" so long as three conditions are met: "(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable

---

[2] Defendant attempts to distinguish *Turner*, *supra*, 45 Cal.App.5th 428, *People v. Flores* (2020) 44 Cal.App.5th 985 (*Flores*), and *People v. Cervantes* (2020) 44 Cal.App.5th 884 (*Cervantes*) on various grounds. We are unaware of any cases that have rejected the analyses contained in these cases. And, in fact, our colleagues in Division Two cited these cases with approval in *People v. Paige* (2020) 51 Cal.App.5th 194, 201 (*Paige*) when rejecting arguments similar to those raised by defendant. Defendant made little effort to discuss, let alone distinguish, *Paige*. For the reasons set forth in this opinion, we disagree with defendant and find *Turner*, *Flores*, and *Cervantes* instructive to our analysis.

3

consequences doctrine. [¶] (2) The petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder. [¶] (3) The petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1170.95, subd. (a).) Any petition that fails to make "a prima facie showing that the petitioner falls within the provisions of [section 1170.95]" may be denied without a hearing. (§ 1170.95, subds. (c) & (d).)

## B. *Defendant's Initial Felony-murder Conviction*

Defendant contends section 1170.95 only requires a felony-murder conviction, and the subsequent reversal by this court of his conviction does not exclude him from filing a petition for resentencing based on that conviction. He argues section 1170.95 does not contain a " 'reversal exception.' " Defendant's position is unavailing.

First, defendant ignores the ample authority regarding the impact of reversal on a conviction. Numerous courts, including our Supreme Court, have explained, " ' "An unqualified reversal remands the cause for new trial and places the parties in the trial court in the same position as if the cause had never been tried." ' " (*People v. Boyer* (2006) 38 Cal.4th 412, 443, fn. 18 (*Boyer*); see also *People v. Welch* (1971) 20 Cal.App.3d 997, 1004 ["a reversal of a judgment of conviction annuls and expunges not only the judgment of conviction but also the record of trial, leaving the accusatory pleading standing against the defendant as if no trial be had"]; *In re Smith* (2008) 42 Cal.4th 1251, 1269 [explaining, in the context of applying the Sexually Violent Predator Act, "a person whose felony conviction has been reversed is in the same position as someone who was charged with, but not convicted of,

4

a felony offense"]; *People v. Morrison* (1980) 109 Cal.App.3d 378, 382 ["A reversal of a conviction places the parties in the trial court in the same position as if the case had never been tried."].) Accordingly, following this court's reversal of his conviction, defendant was "in the same position as if the cause had never been tried" and did not have an existing felony-murder conviction against him. (See *Boyer*, at p. 443, fn. 18.)

Moreover, the plain language of the statute supports our conclusion. Subdivision (a) of section 1170.95 states: "A person convicted of felony murder . . . may file a petition . . . to have the petitioner's murder conviction vacated and to be resentenced on any remaining counts . . . ." But here, defendant's conviction had already been vacated when it was reversed by this court. Nor is he currently serving a sentence based on any felony-murder conviction. Accordingly, there is no conviction to vacate by way of petition.

Defendant asserts that disregarding his conviction due to its subsequent reversal would improperly impose a limitation not articulated in the statutory text. But in so arguing, defendant misconstrues the impact of this court's prior reversal. The trial court did not "disregard" his conviction by denying his petition. Rather, as explained above, defendant does not have a felony-murder conviction that could form the basis for his section 1170.95 petition. (*Boyer, supra,* 38 Cal.4th at p. 443, fn. 18.)

## C. *Defendant's Manslaughter Plea*

Defendant raises a host of arguments for why his manslaughter plea should be subject to resentencing under section 1170.95. All of his arguments have been rejected by other Courts of Appeal, and we see no basis for diverging from those analyses.

## 1. *Statutory Language Does Not Include Plea Agreements for Manslaughter*

Defendant argues the trial court's interpretation would render a substantial portion of the statute superfluous. Specifically, he asserts subdivisions (a)(1) and (2) of section 1170.95 would be stripped of independent meaning if interpreted to restrict relief only to those convicted of felony murder.

"Where a question of statutory interpretation based on undisputed facts is presented, we conduct an independent review of the statute in question. [Citation.] 'In doing so, " 'our fundamental task is "to ascertain the intent of the lawmakers so as to effectuate the purpose of the statute." ' " ' [Citation.] 'We begin by examining the words of the statute, affording them " ' "their ordinary and usual meaning and viewing them in their statutory context" ' " [citation], for " 'if the statutory language is not ambiguous, then . . . the plain meaning of the language governs.' " ' [Citation.] 'We . . . must, if possible without doing violence to the language and spirit of the law, interpret it so as to harmonize and give effect to all its provisions.' [Citation.]

"We turn to extrinsic aids to assist in our interpretation 'when the statute's language is ambiguous or susceptible of more than one reasonable interpretation.' [Citation.] Extrinsic interpretative aids include the ostensible objects to be achieved and the legislative history. [Citation.] ' " 'Ultimately we choose the construction that comports most closely with the apparent intent of the lawmakers, with a view to promoting rather than defeating the general purpose of the statute.' " ' " (*Paige, supra,* 51 Cal.App.5th at p. 200.)

Numerous courts have found section 1170.95 unambiguous and applicable to defendants convicted of murder but not defendants who pled to and were convicted of a lesser offense. (See, e.g., *People v. Sanchez* (2020)

6

48 Cal.App.5th 914, 916 (*Sanchez*) [charged with first degree murder with a gang enhancement, pled guilty to voluntary manslaughter and admitted enhancement]; *Turner*, *supra*, 45 Cal.App.5th at p. 432 [charged with first degree murder and firearm and gang enhancements, pled guilty to voluntary manslaughter and admitted firearm enhancement]; *Flores*, *supra*, 44 Cal.App.5th at pp. 989–990 [charged with murder with robbery and gang enhancements, pled guilty to voluntary manslaughter and admitted enhancements]; *Cervantes*, *supra*, 44 Cal.App.5th at p. 887 [charged with murder, pled no contest to voluntary manslaughter].)  We agree and need not revisit those analyses.

Nor does such an interpretation render subdivision (a)(1) and (2) of section 1170.95 superfluous, as defendant argues.  In *Sanchez*, the defendant argued applying section 1170.95 only to murder convictions would render most of the language in subdivision (a)(2) surplusage.  The Fourth Appellate District disagreed:  "Specifying that section 1170.95 applies to murder convictions both by trial and by guilty plea clarifies that it does not matter how the murder conviction was obtained for section 1170.95 to apply. Regardless of whether that clarification was necessary, ' "the Legislature may choose to state all applicable legal principles in a statute rather than leave some to even a predictable judicial decision." ' [Citation.]  Express statutory language defining the class of defendants to whom section 1170.95 applies is not surplusage.  [Citation.]  Such clarification 'may eliminate potential confusion and avoid the need to research extraneous legal sources to understand the statute's full meaning.' " (*Sanchez*, *supra*, 48 Cal.App.5th at p. 919.)

Our colleagues in Division Two reached the same conclusion in *Paige, supra*, 51 Cal.App.5th 194:  "Read in isolation, section 1170.95,

7

subdivision (a)(2) could be misinterpreted to [not require a defendant to have accepted a plea agreement for murder].  But read in the context of the statute as a whole, considering both its structure and its language, subdivision (a)(2) cannot reasonably be understood to encompass persons who accept a plea offer in lieu of trial for a crime other than murder.  The first paragraph of section 1170.95, subdivision (a) sets forth the basic 'who' and 'what' of the statute—who may seek relief and what they may seek.  The 'who' is '[a] person *convicted of felony murder or murder under a natural and probable consequences theory*' and the 'what' is the opportunity to 'file a petition with the court . . . *to have the petitioner's murder conviction vacated.*'  ([§ 1170.95,] [s]ubd. (a), italics added.)  The provision on which [the defendant] relies, section 1170.95, subdivision (a)(2), is one of three conditions—*all* of which must *also* apply before the person convicted of felony murder or natural and probable consequences murder may seek relief under section 1170.95.  Given the structure of the statute and the language in the first paragraph of section 1170.95, subdivision (a), the reference to a person who 'accepted a plea offer' in subdivision (a)(2) must necessarily mean a person who accepted a plea to, and was convicted of, first or second degree murder in lieu of a trial at which he could have been convicted of either of those charges." (*Id.* at p. 202.)

Even if subdivision (a)(2) of section 1170.95 could have been drafted more concisely, "the rule against surplusage will be applied only if it results in a *reasonable* reading of the legislation." (*Santa Clara County Local Transportation Authority v. Guardino* (1995) 11 Cal.4th 220, 234–235.)  As explained by *Sanchez* and *Paige*, interpreting subdivision (a)(2) to include a person convicted of voluntary manslaughter after a plea conflicts with

8

section 1170.95's other provisions. For this reason, we decline to interpret subdivision (a)(2) in a manner at odds with the rest of the statute.

Defendant attempts to distinguish the above-discussed authority by asserting any interpretation limiting section 1170.95 to murder convictions would not just render a phrase of subdivision (a)(2) superfluous but would render the entirety of both subdivisions (a)(1) and (a)(2) superfluous. While novel, we find the argument meritless. As with subdivision (a)(2), subdivision (a)(1) clarifies the conditions that must be met before a "person convicted of felony murder or murder under a natural and probable consequences theory" may file a resentencing petition. Subdivision (a)(1) explains the "complaint, information, or indictment" must "allow[ ] the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine." (§ 1170.95, subd. (a)(1).) It thus allows defendants to petition for resentencing if, for example, the information did not specifically charge felony murder or murder under the natural and probable consequences doctrine but merely alleged a general charge of murder. (See *People v. Rivera* (2021) 62 Cal.App.5th 217, 233 ["it is well settled that 'only a single statutory offense of murder exists.' [Citation.] Thus, 'it has long been the law in this state that an accusatory pleading charging murder need not specify degree or the manner in which the murder was committed' [citation], nor need it 'specify the theory of murder on which the prosecution relies at trial.' "].) As *Sanchez* explained, "Such clarification 'may eliminate potential confusion and avoid the need to research extraneous legal sources to understand the statute's full meaning.' " (*Sanchez, supra,* 48 Cal.App.5th at p. 919.)

Defendant argues his interpretation would not discount any provisions because it would simply construe the introductory language more broadly to

9

include both those convicted of felony murder and those who pled to lesser offenses. But defendant's interpretation would directly contradict the express statutory language of subdivision (a), which makes resentencing only available to those "convicted of felony murder or murder under a natural and probable consequences theory." (§ 1170.95, subd. (a).) Individuals convicted of lesser offenses, such as manslaughter, are *not* "convicted of felony murder or murder under a natural and probable consequences theory," and we are unaware of any authority holding otherwise. Accordingly, we find the statute unambiguous in applying only to those convicted of felony murder or murder under a natural and probable consequences theory, and we reject defendant's argument to the contrary.

## 2. *Legislative History Does Not Support Defendant's Interpretation*

Citing uncodified section 1, subdivisions (b), (c), (d), and (e) of Senate Bill 1437, Defendant next argues excluding relief for individuals who "accept inflated pleas under the threat of a felony-murder conviction" would undermine the Legislature's goal of "more equitably sentenc[ing] offenders in accordance with their involvement in homicides." He contends his decision to plead guilty to manslaughter, "a crime he indisputably did not commit,"[3] because of the risk of a lengthier sentence he would not now face, demonstrates the need to allow resentencing for lesser offenses.

Putting aside the fact that uncodified findings and declarations do not trump a statute's plain language, we disagree with defendant's position. The relevant question is whether the Legislature intended to provide relief to

---

[3] While defendant repeatedly claims he did not commit, and there was insufficient evidence to convict him of, manslaughter, " '[a] guilty plea [or plea of nolo contendere] admits every element of the charged offense.' " (*People v. Rivera*, *supra*, 62 Cal.App.5th at p. 234.)

10

petitioners with manslaughter convictions, not whether a more expansive reading of the statute could be reconciled with the bill's basic purpose. As explained in *Turner*, the legislative history of Senate Bill 1437 confirms that the Legislature intended to limit eligibility for resentencing to those individuals convicted of murder. (*Turner*, *supra*, 45 Cal.App.5th at pp. 436–438.) We find *Turner*'s analysis on this point persuasive, and defendant offers us no reason to depart from it.

Defendant also notes the Legislative digest does not state the bill's purpose is to vacate a " '*murder* conviction' " but simply a " 'conviction.' " He asserts the bill does not narrow the category of convictions secured through plea agreements. But as *Paige* notes, other portions of the bill repeatedly refer only to "murder" and "murder liability" (*Paige*, *supra*, 51 Cal.App.5th at p. 203), undercutting defendant's argument. (See Stats. 2018, ch. 1015, § 1, subd. (f).) Similarly, various Legislative analyses identified the bill's purpose as related only to those convicted of murder. (See, e.g., Sen. Rules Com., Off. of Sen. Floor Analyses, Analysis of Sen. Bill No. 1437 (2017–2018 Reg. Sess.) as amended Aug. 20, 2018, p. 2 ["This bill limits liability for individuals based on a theory of first or second degree felony murder. This bill allows individuals previously sentenced on a theory of felony murder to petition for resentencing if they meet specified qualifications."]; Assem. Com. on Appropriations, Analysis of Sen. Bill No. 1437 (2017–2018 Reg. Sess.) as amended May 25, 2018, p. 2 ["According to the author [of Senate Bill 1437] [¶] [Senate Bill] 1437 seeks to restore proportional responsibility in the application of California's murder statute . . . ."].)

### 3. *Interpretation Is Not Absurd*

Defendant argues refusing to allow resentencing for lesser offenses would place defendants like him in a worse position than those who had

11

greater culpability and were convicted of felony murder.  He asserts a court's interpretation of the statute cannot result in absurd consequences.

Undoubtedly, "[i]t is axiomatic that the ' " 'language of a statute should not be given a literal meaning if doing so would result in absurd consequences which the Legislature did not intend.' " ' (*Cervantes*, *supra*, 44 Cal.App.5th at p. 887.) . . . We agree with the other courts that have rejected the same argument.  (*Cervantes*, at p. 887; *Flores*, *supra*, 44 Cal.App.5th at pp. 996–997; *Turner*, *supra*, 45 Cal.App.5th at pp. 438–439.)  As the court noted in *Turner*, '[t]he punishment for manslaughter is already less than that imposed for first or second degree murder, and the determinate sentencing ranges of 3, 6, or 11 years for voluntary manslaughter . . . permit a sentencing judge to make punishment commensurate with a defendant's culpability based on aggravating and mitigating factors.' (*Turner*, at p. 439; see § 193, subd. (a).)  Construing section 1170.95 to exclude those convicted of voluntary manslaughter by plea agreement therefore does not 'produce absurdity by undermining the Legislature's goal to calibrate punishment to culpability.' (*Turner*, at p. 439.)" (*Sanchez*, *supra*, 48 Cal.App.5th at pp. 919–920, fn. omitted.)

Defendant's argument also was rejected in *Paige*, *supra*, 51 Cal.App.5th 194.  " '[O]ur construction [does not] produce absurdity by undermining the Legislature's goal to calibrate punishment to culpability.  The punishment for manslaughter is already less than that imposed for first or second degree murder, and the determinate sentencing ranges of 3, 6, or 11 years for voluntary manslaughter and two, three or four years for involuntary manslaughter permit a sentencing judge to make punishment commensurate with a defendant's culpability based on aggravating and mitigating factors. [Citations.]  Providing relief solely to defendants convicted of murder under a

felony-murder or natural and probable consequences theory does not conflict with the Legislature's stated objective to make "statutory changes to more equitably sentence offenders in accordance with their involvement in homicides." ' " (*Id.* at p. 204.)

Defendant next asserts the California Supreme Court has rejected statutory interpretations that would result in irrationally harsher sentences for certain categories of individuals, citing to *People v. King* (1993) 5 Cal.4th 59 (*King*) and *People v. Bullard* (2020) 9 Cal.5th 94. We find those cases distinguishable.

*King* involved a "sentencing anomaly" that was the result of a series of disjointed statutory amendments over multiple years. (See *People v. Cook* (2015) 60 Cal.4th 922, 938, fn. 2.) As a result, "a literal interpretation of interrelated statutes would have meant that some juveniles convicted of first degree murder would be eligible to be committed to the former California Youth Authority (CYA) rather than sentenced to state prison, but the same juveniles who merely attempted to commit first degree murder would be ineligible for such a commitment." (*Ibid.*, italics omitted.) The California Supreme Court concluded the legislative history indicated an intent to make "both successful and intended first degree murderers under the age of 18" eligible for CYA commitment. (*King*, *supra*, 5 Cal.4th at p. 67.) The court reasoned that when the Legislature amended the punishment for attempted murder, "[i]t did not intend a lesser included offense to have potentially harsher penal consequences than the greater offense." (*Id.* at p. 69.) The court determined "[t]he clear legislative intent . . . should prevail over any irrational result caused by the amendment of different statutes in separate codes at different times for unrelated purposes." (*Ibid.*)

13

In considering an argument similar to defendant's, albeit as to the crime of attempted murder, the Second Appellate District in *People v. Munoz* (2019) 39 Cal.App.5th 738, review granted November 26, 2019, S258234, observed that unlike the statutory amendments at issue in *King*, Senate Bill 1437's "plain language is not the result of a disjointed series of amendments over time . . . from which we might infer inadvertence or irrationality.  Instead, the relevant provisions are contained in a single cohesive bill." (*Munoz*, at p. 759.)  Moreover, "in *King* the effect of the series of amendments and judicial interpretations was stark: first degree murderers under 18 were eligible for CYA, whereas persons of the same age who committed attempted murder were not.  Here, in contrast, Senate Bill 1437 does not mandate that persons convicted of attempted murder are punished more severely than persons convicted of murder.  Attempted murderers are statutorily subject to a lesser, not a greater, penalty than murderers.  Senate Bill 1437 does not require that attempted murderers receive a harsher sentence, or prohibit them from receiving a more lenient sentence, than murderers.  On its face, Senate Bill 1437 does not present the same clear-cut distinction as in *King*."[4]  (*Munoz*, at p. 759.)  We agree.  In any event, "[t]he remedy for any potentially inequitable operation of section 1170.95 lies with the Legislature.  If the Legislature concludes it is unwise or inequitable to exclude [certain convictions] from Senate Bill 1437's reach, it has only to amend the law." (*Id.* at p. 760.)

---

[4] Similarly, *People v. Bullard*, *supra*, 9 Cal.5th 94, 105, on which defendant also relies, involved the interpretation of legislation to avoid the consequence that less serious criminal conduct be punished more severely than more culpable conduct.

### *4.  Interpretation Does Not Violate Equal Protection*

Finally, defendant argues the trial court's interpretation violates equal protection principles because it treats, without a rational basis, defendants with lesser convictions more harshly than those with more serious convictions.

" 'Guarantees of equal protection embodied in the Fourteenth Amendment of the United States Constitution and article I, section 7 of the California Constitution prohibit the state from arbitrarily discriminating among persons subject to its jurisdiction.' " (*People v. Chavez* (2004) 116 Cal.App.4th 1, 4.)  "The concept of equal protection recognizes that persons who are similarly situated with respect to a law's legitimate purposes must be treated equally.  [Citation.]  Accordingly, ' "[t]he first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more *similarly situated* groups in an unequal manner." '  [Citation.]  'This initial inquiry is not whether persons are similarly situated for all purposes, but "whether they are similarly situated for purposes of the law challenged." ' " (*People v. Brown* (2012) 54 Cal.4th 314, 328.)  Generally, " ' "[p]ersons convicted of *different* crimes are not similarly situated for equal protection purposes." [Citations.]  "[I]t is one thing to hold . . . that persons convicted of the *same crime* cannot be treated differently.  It is quite another to hold that persons convicted of *different crimes* must be treated equally." ' " (*People v. Barrera* (1993) 14 Cal.App.4th 1555, 1565.)

Here, defendant erroneously defines the class as those who faced felony-murder charges.  To the contrary, the class is based on an individual's conviction.  As explained in part II.C.1., *ante*, section 1170.95 is triggered only if a defendant is convicted of felony murder or murder under a natural

15

and probable consequences theory.  Here, defendant was convicted of voluntary manslaughter, a different crime than murder and which carries a different punishment than murder.  (*People v. Strickland* (1974) 11 Cal.3d 946, 960.)  He thus is not similarly situated to those convicted of murder, and his equal protection challenge fails at the first step.  (See *Cervantes*, *supra*, 44 Cal.App.5th at p. 888.)

Even assuming the two groups were similarly situated, there is no equal protection violation "provided the classifications are made with a legitimate goal to be accomplished."  (*People v. Mora* (2013) 214 Cal.App.4th 1477, 1483.)  "A fundamental principle of rational-basis equal protection review, articulated by both the United States and California Supreme Courts, is 'the propriety of a legislature's taking reform " 'one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind.' " ' "  (*People v. Lopez* (2019) 38 Cal.App.5th 1087, 1111, review granted Nov. 13, 2019, S258175.)  "Here the legislative focus was centered on the unfairness of the felony murder rule.  The Legislature could rationally decide to change the law in this area and not be currently concerned with crimes not involved with that rule.  [Citation.]  It also could reasonably decide that the punishment for voluntary manslaughter was appropriate, but the punishment for murder based on the felony murder rule could be excessive and reform was needed only there."  (*Cervantes*, *supra*, 44 Cal.App.5th at p. 888.)  Under rational-basis review, equal protection is satisfied " ' "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." ' "  (*Kasler v. Lockyer* (2000) 23 Cal.4th 472, 482, italics omitted.)

We conclude the decision to limit resentencing under Senate Bill 1437 to individuals convicted of murder reflects the Legislature's considered efforts

to specifically address inequities in the felony-murder rule and the disproportionate punishment borne by certain individuals convicted of murder relative to their individual culpability in the offense. That the ameliorative benefits of this law do not extend to those convicted of voluntary manslaughter does not offend principles of equal protection.

## III.  DISPOSITION

The trial court's order denying defendant's petition for resentencing is affirmed.

MARGULIES, ACTING P. J.

WE CONCUR:


BANKE, J.


SANCHEZ, J.


A159153
*People v. Thomas*