Filed 8/17/21

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT


| | |
|---|---|
| THE PEOPLE, | H048280 |
| Plaintiff and Respondent, | (Monterey County Super. Ct. No. SS161619) |
| v. | |
| JULIE ANN McCLURE, | |
| Defendant and Appellant. | |


## I.     INTRODUCTION

In 2017, after initially having been charged with willful, deliberate, and premeditated murder (Pen. Code, § 187, subd. (a))[1], defendant Julie Ann McClure pleaded no contest to voluntary manslaughter (§ 192, subd. (a)) and 11 other crimes pursuant to a plea agreement.  The superior court imposed an agreed-upon determinate sentence of 25 years.

In 2020, defendant filed a petition for resentencing pursuant to section 1170.95, which was enacted through the passage of Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437).  (Stats. 2018, ch. 1015, § 4.)  Senate Bill 1437 "amend[ed] the felony murder rule and the natural and probable consequences doctrine . . . to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant of the underlying felony who acted with reckless indifference to human life."  (Stats. 2018, ch. 1015, § 1, subd. (f).)  It added

---

[1] All further statutory references are to the Penal Code unless otherwise specified.

section 1170.95 to allow individuals "convicted of felony murder or murder under a natural and probable consequences theory" to petition the sentencing court to vacate the "murder conviction" and be resentenced on any remaining counts. (Stats. 2018, ch. 1015, § 4; § 1170.95, subd. (a).) After briefing and argument by the parties, the superior court denied the petition, determining that defendant had failed to state a prima facie case for relief because she was convicted of voluntary manslaughter, not murder.

Defendant contends that we must construe section 1170.95 to apply to individuals who pleaded guilty to voluntary manslaughter in lieu of going to trial on a murder charge under a felony murder or a natural and probable consequences theory. Alternatively, defendant contends that if we determine that section 1170.95 only applies to individuals convicted of murder, it violates her federal and state constitutional rights to equal protection and substantive due process and the prohibitions against cruel and/or unusual punishment.

Several Courts of Appeal have considered whether section 1170.95 applies to individuals who were charged with murder but pleaded guilty to voluntary manslaughter. We join those courts in concluding that section 1170.95 does not apply to individuals convicted of voluntary manslaughter. (See *People v. Turner* (2020) 45 Cal.App.5th 428, 433 (*Turner*); *People v. Cervantes* (2020) 44 Cal.App.5th 884, 886-887 (*Cervantes*); *People v. Flores* (2020) 44 Cal.App.5th 985, 993 (*Flores*); *People v. Sanchez* (2020) 48 Cal.App.5th 914, 916 (*Sanchez*); *People v. Paige* (2020) 51 Cal.App.5th 194, 204 (*Paige*); *People v. Harris* (2021) 60 Cal.App.5th 557, 563 (*Harris*).) We also reject defendant's constitutional claims.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. *Factual Background*[2]

In September 2016, Monterey County Sheriff's detectives met with defendant after she advised them that she had information on the death of Ronnie Vincent Cronn. Cronn had been missing since May 2016.

Defendant told detectives that on May 23, 2016, she lured Cronn to the residence she shared with her boyfriend, Jeffrey Madruga, because she suspected Cronn had "pointed their residence out to prospective burglars who . . . subsequently burglarized their residence twice." Defendant stated that she zip-tied Cronn's hands and feet and then struck him in the face and upper body while Madruga and "Paulo," later identified as Paulo Yngoc Barcenas, also struck him. Defendant told detectives that Cronn eventually admitted that he had pointed out the residence to burglars. Defendant, Madruga, and Barcenas placed Cronn in Barcenas's vehicle and drove him to another location.

Madruga corroborated defendant's statement. In addition, Madruga told detectives that while Cronn was zip-tied, Barcenas repeatedly used a stun gun on him and that he and Barcenas struck Cronn several times in the head with closed fists, knocking him to the floor at least twice. Cronn also fell on the stairs while being punched.

According to Madruga, the group decided to take Cronn to " 'JD['s]' " residence. Once they arrived, they dragged Cronn out of the car and Barcenas and JD repeatedly struck and kicked him. They put Cronn in the rear seat of Barcenas's vehicle and went inside, monitoring Cronn by video surveillance.

Madruga stated that over the next several hours, Barcenas periodically went to the vehicle and beat Cronn. At some point, Barcenas leaned on Cronn's chest until he died. Madruga said that they took Cronn's body to a storage locker. The next day, defendant, Madruga, and Barcenas moved Cronn to a remote location where they burned Cronn's

---

[2] The facts are based on the probation report.

3

body and dumped it down an embankment. They returned to the location the following day and pushed it farther down the embankment to prevent its discovery.

Defendant and Madruga took detectives to the area where they disposed of Cronn's body. Detectives later discovered that Madruga was manufacturing methamphetamine at his residence.

### B.    *Procedural History*

In October 2016, the district attorney charged defendant by complaint with deliberate and premeditated murder (§ 187, subd. (a)).

On October 24, 2017, the district attorney filed an amended complaint charging defendant with deliberate and premeditated murder (§ 187, subd. (a); count 1); voluntary manslaughter (§ 192, subd. (a); count 2); kidnapping (§ 207, subd. (a); count 3); assault by means likely to cause great bodily injury (§ 245, subd. (a)(4); count 4); false imprisonment by violence (§ 236; count 5); mayhem (§ 203; count 6); assault with a stun gun or taser (§ 244.5, subd. (b); count 7); possession of a firearm by a felon (§ 29800, subd. (a)(1); count 8); possession of ammunition (§ 30305, subd. (a)(1); count 9); possession of a controlled substance for sale (Health & Saf. Code, § 11378; count 10); manufacturing phencyclidine (*id.*, § 11397.6, subd. (a); count 11); possession with intent to manufacture methamphetamine (*id.*, § 11383.5, subd. (a); count 12); and mutilation or disinterment of human remains (*id.*, § 7052, subd. (a); count 13). The district attorney also alleged that defendant personally inflicted great bodily injury (§ 12022.7, subd. (a)) during the commission of count 3.

That same date, defendant pleaded no contest to all of the charges except murder and admitted the great bodily injury allegation in exchange for a stipulated 25-year sentence.

In January 2018, the superior court sentenced defendant to an aggregate term of 25 years, which included the upper term of 11 years for voluntary manslaughter. (§ 193, subd. (a).)

4

In June 2020, defendant filed a petition for resentencing pursuant to section 1170.95. The petition consisted of a three-page preprinted form, two pages of which were a declaration defendant signed under penalty of perjury. Among other boxes, defendant checked boxes on the form declaring that "[a] complaint, information, or indictment was filed against [her] that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine"; "[she] pled . . . no contest to voluntary manslaughter[3] in lieu of going to trial because [she] believed [she] could have been convicted of 1st or 2nd degree murder at trial pursuant to the felony murder rule or the natural and probable consequences doctrine"; and she "could not now be convicted of 1st or 2nd degree murder because of changes made to . . . § § 188 and 189, effective January 1, 2019."

The district attorney opposed the petition, asserting that defendant was ineligible for relief because she was convicted of voluntary manslaughter, not murder. The superior court appointed counsel to represent defendant, and defendant replied to the district attorney's opposition. Defendant contended that section 1170.95 and its legislative materials "ma[de] it clear that a person who accepted an offer of manslaughter is eligible for resentencing."

Based on section 1170.95's plain language, the superior court denied the petition, ruling that a person who pleaded guilty to or was convicted of voluntary manslaughter is ineligible for relief.

### III.    DISCUSSION

Defendant contends that we must construe section 1170.95 to provide relief to individuals convicted of voluntary manslaughter pursuant to a plea agreement. Alternatively, defendant contends that if we determine that section 1170.95 does not apply to such individuals, the statute violates her federal and state equal protection and

---

[3] Based on the different typeface, it appears that "voluntary manslaughter" was typed onto defendant's petition form.

substantive due process rights and the prohibitions against cruel and/or unusual punishment. The Attorney General asserts that the superior court properly denied defendant's petition because the plain language of section 1170.95 solely provides relief to individuals convicted of murder and that section 1170.95 does not violate defendant's constitutional rights.

### A. *Senate Bill 1437's Statutory Framework*

The Legislature enacted Senate Bill 1437 to "amend the felony murder rule and the natural and probable consequences doctrine . . . to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant of the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) The bill amended sections 188 and 189, which pertain to the definition of malice and the degrees of murder. (Stats. 2018, ch. 1015, §§ 2-3.)

The Legislature amended section 188 by adding subdivision (a)(3), which provides: "Except as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." (Stats. 2018, ch. 1015, § 2; § 188, subd. (a)(3).) And section 189, subdivision (e), now limits liability for murder to a person who was either the actual killer or, though not the actual killer, acted "with intent to kill" and "aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer" in the commission of first degree murder, or was "a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2." (Stats. 2018, ch. 1015, § 3; § 189, subd. (e).)

In addition to the amendments to sections 188 and 189, Senate Bill 1437 added section 1170.95 (Stats. 2018, ch. 1015, § 4), which allows "[a] person convicted of felony murder or murder under the natural and probable consequences theory" to petition the

6

sentencing court to vacate the "murder conviction" and be resentenced on any remaining counts (§ 1170.95, subd. (a)). All of the following conditions must apply to warrant section 1170.95 relief: "(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine[;] [¶] (2) The petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder[; and] [¶] (3) The petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1170.95, subd. (a).)

If the petitioner makes a prima facie showing that he or she is entitled to relief, the court must "hold a hearing to determine whether to vacate the murder conviction and to recall the sentence and resentence the petitioner on any remaining counts." (§ 1170.95, subd. (d)(1).) "The parties may waive and resentencing hearing and stipulate that the petitioner is eligible to have his or her murder conviction vacated" and to be resentenced. (*Id.*, subd. (d)(2).)

### B.  *Standard of Review*

Questions of statutory interpretation are reviewed de novo. (See *People v. Tran* (2015) 61 Cal.4th 1160, 1166.) When interpreting a statute, our " 'fundamental task . . . is to determine the Legislature's intent so as to effectuate the law's purpose.' " (*People v. Ruiz* (2018) 4 Cal.5th 1100, 1105.) " 'Because the statutory language is generally the most reliable indicator of that intent, we look first at the words themselves, giving them their usual and ordinary meaning.' [Citations.] 'If the statutory language is unambiguous, then its plain meaning controls. If, however, the language supports more than one reasonable construction, then we may look to extrinsic aids, including the ostensible objects to be achieved and the legislative history.' " (*Id.* at pp. 1105-1106.) "We . . . must, if possible without doing violence to the language and spirit of the law,

7

interpret it so as to harmonize and give effect to all its provisions." (*People v. Garcia* (1999) 21 Cal.4th 1, 14, fn. omitted.)

C.     ***Section 1170.95 Does Not Apply to Individuals Charged with Murder But Convicted by Plea of Voluntary Manslaughter***

    **1.   By Its Plain Language, Section 1170.95 Solely Provides Relief to Individuals Convicted of Murder**

As stated above, section 1170.95, subdivision (a) provides that "[a] person convicted of felony murder or murder under a natural and probable consequences theory may file a petition with the [sentencing] court . . . to have the . . . *murder conviction* vacated and to be resentenced on any remaining counts" if certain conditions, enumerated in subdivision (a)(1) through (3), are met. (Italics added.) Subdivision (d) of section 1170.95 states that if an order to show cause has been issued, "the court shall hold a hearing to determine whether to vacate the *murder conviction* and to recall the sentence and resentence the petitioner on any remaining counts," or "[t]he parties may waive a resentencing hearing and stipulate that the petitioner is eligible to have his or her *murder conviction* vacated and for resentencing." (§ 1170.95, subd. (d)(1), (2), italics added.) The statute does not mention voluntary manslaughter, or any other crime apart from murder. Thus, like other courts before us, we conclude that by its plain language, section 1170.95 applies solely to individuals convicted of murder. (See *Turner*, *supra*, 45 Cal.App.5th at pp. 435-436; *Flores*, *supra*, 44 Cal.App.5th at p. 993; *Sanchez*, *supra*, 48 Cal.App.5th at p. 918; *Paige*, *supra*, 51 Cal.App.5th at p. 202; *Harris*, *supra*, 60 Cal.App.5th at p. 566.)

Contending that section 1170.95 applies to individuals convicted by plea of voluntary manslaughter, defendant argues that "in the second half of the disjunctive phrase of [section 1170.95,] subdivision (a)(2), the statutory language indicates that a conviction by plea bargain can be for any offense at all . . . as long as the prosecution's plea offer was accepted 'in lieu of a trial at which the petitioner . . .', at the time of the

8

acceptance, could have been 'convicted for first degree or second degree murder.' "
Like the other Courts of Appeal, we too reject this argument.  (See *Turner*, *supra*,
45 Cal.App.5th at p. 436; *Flores*, *supra*, 44 Cal.App.5th at pp. 994-995; *Sanchez*, *supra*,
48 Cal.App.5th at pp. 918-919; *Paige*, *supra*, 51 Cal.App.5th at pp. 201-202; *Harris*,
*supra*, 60 Cal.App.5th at p. 567.)

Certainly, subdivision (a)(2) of section 1170.95 provides that an individual may
qualify for relief if he or she "was convicted of first degree or second degree murder
following a trial *or accepted a plea offer in lieu of a trial at which the petitioner could
be convicted for first degree or second degree murder*."  (Italics added.)  But defendant's
claim "ignores the introductory language in section 1170.95, subdivision (a) that limits
petitions to persons 'convicted of . . . *murder*.' "  (*Turner*, *supra*, 45 Cal.App.5th at
p. 436.)  Defendant's argument "places outsized importance on a single clause to the
exclusion of the provision's other language.  This violates well-settled rules of
construction, which caution that we must not 'consider the statutory words in isolation;
we must read the language as it is placed in the code section, and in the context of the
entire statutory scheme.' "  (*Flores*, *supra*, 44 Cal.App.5th at p. 995.)  Read in the context
of the statute as a whole, subdivision (a)(2) "cannot reasonably be understood to
encompass persons who accept a plea offer in lieu of trial for a crime other than murder."
(*Paige*, *supra*, 51 Cal.App.5th at p. 202.)

Defendant argues that courts have incorrectly interpreted the plain language of
subdivision (a) of section 1170.95 because "there is no such thing as a 'conviction of
felony murder or murder under a natural and probable consequence theory.'  While there
always has been a crime called 'murder,' defined in . . . sections 187 and 188, there has
never been a crime called 'felony murder' or 'murder under a natural and probable
consequence theory.' "  Defendant contends that "[s]ince the introductory language of
subdivision (a) refers to legal *theories* of how the crime of murder might be committed
rather than actual crimes, it would apply to any person '*convicted of*' a crime under one

9

of those theories," including voluntary manslaughter. However, defendant again inappropriately focuses on isolated language rather than reading the entirety of subdivision (a) together. Subdivision (a) plainly states that an individual may petition to have his or her "murder conviction vacated." (§ 1170.95, subd. (a).) Reading subdivision (a) as a whole, as we must, the provision unambiguously means that an individual convicted of murder under a felony murder or a natural and probable consequences theory may file a resentencing petition when all of the conditions in subdivision (a)(1) through (3) apply.[4]

In sum, section 1170.95's "petitioning prerequisites and available relief all presuppose a murder conviction." (*Turner*, *supra*, 45 Cal.App.5th at p. 439.) Moreover, although we need not consult extrinsic aids as section 1170.95's text "is unambiguous and provides a clear answer" (*Microsoft Corp. v. Franchise Tax Bd.* (2006) 39 Cal.4th 750, 758), consideration of Senate Bill 1437's legislative history supports our conclusion that the Legislature did not intend to provide resentencing relief to individuals convicted of voluntary manslaughter. As *Turner* observed, "[t]he uncodified legislative declarations and findings in Senate Bill 1437 make repeated references to 'murder,' underscoring the need to amend [the felony murder rule and] the natural and probable consequences doctrine 'as it relates to murder,' but include no references to manslaughter." (*Turner*, *supra*, at p. 439; see Stats. 2018, ch. 1015, § 1, subds. (f), (g).) "And the legislative history underscores that the Legislature did not intend to extend relief to persons . . . who were convicted of manslaughter by plea." (*Turner*, *supra*, at p. 439.)

---

[4] We also note that defendant did not admit to killing Cronn under a felony murder or a natural consequences theory when she pleaded no contest to voluntary manslaughter. Thus, contrary to defendant's claim, she was not convicted of voluntary manslaughter "under one of those theories."

10

As examined in detail by our colleagues in the Fourth District in *Turner*, Senate Bill 1437's legislative history demonstrates that the Legislature "understood the distinction between murder and manslaughter and focused its efforts on revising accomplice liability under a felony murder or natural and probable consequences theory." (*Turner*, *supra*, 45 Cal.App.5th at p. 438.)  Both the report by the Senate Committee on Public Safety and the report by the Senate Appropriations Committee distinguished murder from manslaughter based on the murder element of malice.  (*Id*. at pp. 437-438.) Moreover, "nearly every committee report and analyses made note of the life sentences imposed for defendants convicted of first or second degree murder.  One report based cost estimates on the number of inmates serving terms for first or second degree murder. Finally, [section 1170.95's] petitioning procedure was *restricted* by amendment to apply to persons convicted of felony murder or murder under a natural and probable consequences theory."[5]  (*Turner*, *supra*, at p. 438.)

Thus, we conclude that the plain language of section 1170.95 unambiguously provides resentencing relief solely to qualifying individuals convicted of murder, and that the statute does not apply to individuals charged with murder but convicted by plea of voluntary manslaughter.

### 2.  A Plain Reading of Section 1170.95 Does Not Render Provisions Superfluous

Defendant argues that reading section 1170.95 to plainly limit relief to individuals convicted of murder would render the *latter half* of subdivision (a)(2) "completely superfluous" because "if the subdivision (a) introductory language limited eligible

---

[5] Defendant argues that "[w]hen the Senate proposed subdivision (a)'s introductory language, there is a strong likelihood that it simply failed to consider the possibility that 'felony-murder' or 'natural and probable consequences murder' might be plea-bargained down to manslaughter."  We find nothing in Senate Bill 1437's legislative history or in section 1170.95's statutory language that demonstrates legislative inadvertence in this regard.

persons to those convicted of murder under . . . section 187, it would be unnecessary to specify, in subdivision (a)(2), *how* the person was convicted under section 187; i.e., whether by trial or acceptance of a plea offer."  Defendant also argues that limiting section 1170.95 relief to individuals convicted of murder would render *all* of subdivision (a)(2) superfluous because "deleting subdivision (a)(2) *in its entirety* would not change the meaning of subdivision (a)."  We are not persuaded.

As stated above, subdivision (a)(2) requires a section 1170.95 petitioner to have been "convicted of first degree or second degree murder following a trial or [to have] accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder."  (§ 1170.95. subd. (a)(2).)  By "[s]pecifying that section 1170.95 applies to murder convictions both by trial and by guilty plea," the Legislature "clarifie[d] that it does not matter how the murder conviction was obtained for section 1170.95 to apply."  (*Sanchez*, *supra*, 48 Cal.App.5th at p. 919.)  "Regardless of whether that clarification was necessary, ' "the Legislature may choose to state all applicable legal principles in a statute rather than leave some to even a predictable judicial decision." '  [Citation.]  Express statutory language defining the class of defendants to whom section 1170.95 applies is not surplusage.  [Citation.]  Such clarification 'may eliminate potential confusion and avoid the need to research extraneous legal sources to understand the statute's full meaning.'  [Citation.]"  (*Ibid.*)

Defendant next asserts that concluding that the plain language of section 1170.95 limits relief to individuals convicted of murder would "render all of subdivision (a)(1) superfluous."  (Capitalization, bold, and italics omitted.)  Subdivision (a)(1) requires that "[a] complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine."  (§ 1170.95, subd. (a)(1).)  We again find, however, that the Legislature's decision to specify the requisite charging document was

12

an appropriate clarification, not surplusage. (See *Carter v. California Dept. of Veterans Affairs* (2006) 38 Cal.4th 914, 929.)

### 3. The Plain Language of Section 1170.95 Does Not Contain Latent Ambiguities as Applied to Defendant

Defendant contends that even assuming that section 1170.95, subdivision (a) limits relief to individuals convicted of murder, subdivision (a) contains latent ambiguities that prevent a literal construction. First, defendant argues that we must not construe subdivision (a) literally because doing so "creates serious constitutional issues." As we explain below, however, the Legislature's decision to limit section 1170.95 relief to qualifying individuals convicted of murder is not unconstitutional. (See *post* at pp. 16-20.) Second, defendant reiterates her contentions that a plain reading of subdivision (a) renders subdivision (a)(1) and (a)(2) superfluous, and argues that this "demonstrat[es] a need to construe the statute in a manner which resolves the latent ambiguity." For the reasons we explained above, however, we conclude that a plain reading of subdivision (a) does not render subdivision (a)(1) and (a)(2) superfluous. (See *ante* at pp. 11-13.)

Third, defendant argues that section 1170.95 contains a latent ambiguity because a literal interpretation of subdivision (a)(2) "would . . . subvert[] and frustrate[]" the legislative purpose behind Senate Bill 1437 as it would exclude from relief individuals who pleaded guilty to first or second degree murder without the benefit of a plea agreement, individuals who made a plea offer that the prosecution accepted, and individuals convicted of second degree murder pursuant to a plea agreement where the evidence supported only a conviction for first degree felony murder. Defendant further argues that such exclusions under a literal reading of subdivision (a)(2) would also lead to unjust results, again demonstrating a latent ambiguity. But even assuming defendant has identified a latent ambiguity, or, as the Attorney General posits, a drafting error, in subdivision (a)(2)'s alleged plain language exclusion of individuals who pleaded guilty outside of a plea agreement, made a plea offer the prosecution accepted, or pleaded guilty

13

to second degree murder where the evidence only supported a first degree felony murder conviction, defendant does not explain why that would require us to construe section 1170.95 to apply to individuals like her, *who accepted a plea offer and pleaded no contest to voluntary manslaughter*.

### 4. A Plain Reading of Section 1170.95 Does Not Produce Absurd Consequences

Defendant contends that we should reject a literal interpretation of section 1170.95 as applying only to individuals convicted of murder because it creates absurd results the Legislature could not have intended. Relying primarily on *People v. Bullard* (2020) 9 Cal.5th 94 (*Bullard*), defendant argues that it makes "no logical sense for the Legislature to include a greater conviction [murder] in a statutory remedy but exclude a lesser conviction [voluntary manslaughter]."

In *Bullard*, the California Supreme Court held "that to interpret Proposition 47 [literally] to split the [Vehicle Code] section 10851 taking offense into two offenses — misdemeanor taking with intent to permanently deprive the owner of the vehicle, and felony taking with intent to do so only temporarily—is so patently illogical that we cannot imagine any plausible reason why voters might have intended that result." (*Bullard*, *supra*, at p. 109.) The court therefore construed section 490.2 to apply to convictions of temporary vehicle takings, avoiding a consequence where less serious criminal conduct would be punished more severely than more culpable conduct. (*Bullard*, *supra*, at pp. 100, 105.)

In contrast to the statutory scheme at issue in *Bullard*, the plain language interpretation of section 1170.95 as applying to individuals convicted of murder but not voluntary manslaughter does not produce a "patently illogical" result. (*Bullard*, *supra*, 9 Cal.5th at p. 109.) "The punishment for manslaughter is already less than that imposed for first or second degree murder, and the determinate sentencing ranges of 3, 6, or 11 years for voluntary manslaughter and two, three, or four years for involuntary

14

manslaughter permit a sentencing judge to make punishment commensurate with a defendant's culpability based on aggravating and mitigating factors. [Citations.] Providing relief solely to defendants convicted of *murder* under a felony-murder or natural and probable consequences theory does not conflict with the Legislature's stated objective to make 'statutory changes to more equitably sentence offenders in accordance with their involvement in homicides.' (Stats. 2018, ch.1015, § 1, subd. (b).)" (*Turner*, *supra*, 45 Cal.App.5th at p. 439.) Indeed, " '[t]he gap between a defendant's culpability in aiding and abetting the target offense and the culpability ordinarily required to convict on the nontarget offense is greater in cases where the nontarget offense is murder, than where the nontarget offense' is voluntary manslaughter. [Citation.] Given this disparity, '[t]he Legislature could have reasonably concluded reform in murder cases "was more crucial or imperative." ' " (*Flores*, *supra*, 44 Cal.App.5th at pp. 996-997, fn. omitted.)

### 5. The Rule of Lenity Does Not Apply

Defendant contends that she is entitled to relief under the rule of lenity.

The rule of lenity requires courts to " 'resolve doubts as to the meaning of a statute in a criminal defendant's favor.' " (*People v. Soto* (2018) 4 Cal.5th 968, 980 (*Soto*).) The rule " 'applies only when two reasonable interpretations of a penal statute stand in relative equipoise. "[A]lthough true ambiguities are resolved in a defendant's favor, an appellate court should not strain to interpret a penal statute in defendant's favor if it can fairly discern a contrary legislative intent." ' [Citation.]" (*Ibid.*)

Here, for the reasons explained, section 1170.95's plain language unambiguously affords relief solely to individuals convicted of murder, and we can " ' "fairly discern a legislative intent" ' " to limit section 1170.95 resentencing relief to individuals convicted of murder. (*Soto*, *supra*, 4 Cal.5th at p. 980.) Thus, the rule of lenity does not apply.

### 6. There Is No Basis to Rewrite the Statute

Finally, under the doctrine of judicial reformation, defendant asks this court to treat the Legislature's use of the word "murder" before "conviction" in section 1170.95,

subdivisions (a) and (d) as drafting error and to "delet[e] the word 'murder' from the phrase 'murder conviction.' "

The judicial reformation doctrine allows courts to "correct[]" statutory language "when it appears clear that a word has been erroneously used." (*People v. Skinner* (1985) 39 Cal.3d 765, 775.) However, "the basic principle of statutory and constitutional construction . . . mandates that courts, in construing a measure, not undertake to rewrite its unambiguous language." (*Ibid.*) Because we have determined that section 1170.95 unambiguously limits its resentencing relief to individuals convicted of murder, we may not rewrite the statute. Moreover, as explained above, Senate Bill 1437's uncodified sections and legislative history demonstrate that the Legislature intended to limit section 1170.95 resentencing relief to individuals convicted of murder. (See *ante* at pp. 10-11.)

For these reasons, we reject defendant's arguments that we must construe section 1170.95 to apply to individuals charged with murder but convicted by plea of voluntary manslaughter.

**D.      Section 1170.95 Does Not Violate Defendant's Equal Protection Rights**

Defendant contends that if we determine that section 1170.95 limits relief to individuals convicted of murder, the statute violates her federal and state rights to equal protection.

In determining a federal or state equal protection claim, we first inquire whether " 'the state has adopted a classification that affects two or more similarly situated groups in an unequal manner.' " (*People v. Wilkinson* (2004) 33 Cal.4th 821, 836 (*Wilkinson*).) The question " 'is not whether persons are similarly situated for all purposes, but "whether they are similarly situated for purposes of the law challenged." ' [Citation.]" (*People v. Brown* (2012) 54 Cal.4th 314, 328.) Next, if the classification affects similarly situated groups unequally and, as here, does not involve a suspect class or fundamental

16

right, we inquire whether the classification is " 'rationally related to a legitimate governmental purpose.' " (*Wilkinson*, *supra*, at p. 836.)

We agree with the other Courts of Appeal that have rejected equal protection challenges to section 1170.95 by individuals convicted by plea of voluntary manslaughter on the basis that such offenders are not similarly situated to individuals convicted of murder, which carries a more severe punishment. (See *Cervantes*, *supra*, 44 Cal.App.5th at pp. 886, 888; *Sanchez*, *supra*, 48 Cal.App.5th at pp. 920-921; *Paige*, *supra*, 51 Cal.App.5th at pp. 205-206.) "Normally 'offenders who commit different crimes are not similarly situated' for equal protection purposes. [Citation.]" (*Cervantes*, *supra*, at p. 888.) But even if we assume defendant is similarly situated to individuals convicted of felony murder for section 1170.95's purposes, defendant's equal protection claim fails because there is a rational basis for the Legislature's decision to restrict relief to individuals convicted of murder. (See *Cervantes*, *supra*, at pp. 888-889; *Sanchez*, *supra*, at p. 921; *Paige*, *supra*, at pp. 205-206 [adopting *Cervantes*'s and *Sanchez*'s analysis].)

As determined in *Cervantes*, the Legislature "could reasonably decide that the punishment for voluntary manslaughter was appropriate, but the punishment for murder based on the felony murder rule [or under the natural and probable consequences theory] could be excessive and reform was needed only there." (*Cervantes*, *supra*, 44 Cal.App.5th at p. 888.) "The decision not to include manslaughter in section 1170.95 falls within the Legislature's 'line-drawing' authority as a rational choice that is not constitutionally prohibited. [Citation.] '[T]he Legislature is afforded considerable latitude in defining and setting the consequences of criminal offenses.' [Citation.] A classification is not arbitrary or irrational simply because it is 'underinclusive.' [Citation.] 'A criminal defendant has no vested interest " 'in a specific term of imprisonment or in the designation [of] a particular crime [he or she] receives.' " ' [Citation.] 'Courts routinely decline to intrude upon the "broad discretion" such policy judgments entail.' [Citation.]" (*Id.* at pp. 888-889.)

17

In making her equal protection claim, defendant primarily relies on *Hooper v. Deukmejian* (1981) 122 Cal.App.3d 987 (*Hooper*), *People v. Noyan* (2014) 232 Cal.App.4th 657 (*Noyan*), and *Newland v. Board of Governors* (1977) 19 Cal.3d 705 (*Newland*) to argue that it is unconstitutional to deny her resentencing because she "committed the same acts with the same *mens rea*" as individuals convicted of felony murder. In each of those cases, the court found no rational basis for the disparate treatment at issue. (See *Hooper*, *supra*, at p. 1015 [involving the denial of benefits of legislation that mandated the destruction of conviction and arrest records, among other things, for marijuana-related offenses to an individual charged with marijuana possession but convicted of maintaining a place for narcotics use or sale, which was stipulated to be a lesser included offense]; *Noyan*, *supra*, at p. 663 [involving the distinction for section 1170, subdivision (h) purposes between the offense of knowingly bringing a controlled substance or controlled substance paraphernalia into a custodial facility, which received section 1170, subdivision (h) treatment, and the offense of knowingly bringing alcohol or noncontrolled substances and paraphernalia into a custodial facility, which did not]; *Newland*, *supra*, at p. 713 [involving a statute that authorized the issuance of community college credentials to qualifying felons but not to misdemeanants].)

Notably, the cases were all decided before *Johnson v. Department of Justice* (2015) 60 Cal.4th 871, where the California Supreme Court stressed that "[t]o mount a successful rational basis challenge, a party must ' "negative every conceivable basis" ' that might support the disputed statutory disparity. [Citation.] If a plausible basis exists for the disparity, courts may not second-guess its ' "wisdom, fairness, or logic." ' [Citations.]" (*Id.* at p. 881.) " 'A classification is not arbitrary or irrational simply because there is an "imperfect fit between means and ends" ' [citations], or 'because it may be "to some extent both underinclusive and overinclusive" ' [citations]." (*Id.* at p. 887.) "At bottom, the Legislature is afforded considerable latitude in defining and setting the consequences of criminal offenses." (*Ibid.*)

18

For these reasons, we conclude that defendant's equal protection claim fails—both because she is not similarly situated to individuals convicted of murder and because there is a rational basis for limiting resentencing relief to individuals convicted of murder given the severity of the punishment accompanying the offense.

### E. The Denial of Relief Does Not Violate the Prohibition Against Cruel and/or Unusual Punishment

Defendant contends that denying section 1170.95 resentencing relief to her, an individual "who plea-bargained to a lesser-included offense [voluntary manslaughter] [and] is treated dramatically worse than a person who committed the same offense with the same mental state but plea-bargained to a greater offense [murder], . . . makes that result so arbitrary as to violate the Eighth Amendment and the state constitutional proscription against cruel and/or unusual punishment."

"Both the Eighth Amendment [to the United States Constitution] and article I, section 17 [of the California Constitution], proscribe punishment which is disproportionate to the particular offense." (*In re Rodriguez* (1975) 14 Cal.3d 639, 652 (*Rodriguez*), superseded by statute on other grounds.) In determining whether a punishment is disproportionate, we consider "the nature of the offense and/or the offender, with particular regard to the degree of danger both present to society"; "the challenged penalty [compared to] the punishments prescribed in the *same jurisdiction* for *different offenses* which, by the same test, must be deemed more serious"; and "the challenged penalty [compared to] the punishments prescribed for the *same offense* in *other jurisdictions*." (*In re Lynch* (1972) 8 Cal.3d 410, 425, 426, 427, superseded by statute on other grounds.)

Importantly, whether a punishment is disproportionate to an offense generally depends on "the circumstances existing at the time of the offense." (*Rodriguez*, *supra*, 14 Cal.3d at p. 652.) As defendant concedes, at the time of her offense, the punishment for murder was greater than the punishment for voluntary manslaughter, as it remains.

19

Thus, we must reject defendant's cruel and/or unusual punishment claim because it relies entirely on a comparison of the punishment imposed for her 2016 commission of voluntary manslaughter to the punishment *currently* imposed on individuals who were convicted of murder but are eligible for resentencing under section 1170.95.

###### F.    The Denial of Relief Does Not Violate Defendant's Due Process Rights

Defendant also contends that section 1170.95's exclusion of relief for individuals charged with murder but convicted by plea of voluntary manslaughter is so arbitrary that it violates her federal and state rights to substantive due process.

" '[S]ubstantive due process requires a rational relationship between the objectives of a legislative enactment and the methods chosen to achieve those objectives.' [Citation.]  Here there was such a relationship.  The legislative goal was to eliminate the sentencing disparity caused by the felony murder rule [and the natural and probable consequences doctrine].  That goal was properly achieved by the section 1170.95 petition procedure to vacate those murder convictions." (*Cervantes*, *supra*, 44 Cal.App.5th at p. 889, fn. omitted.)

###### G.    Conclusion

Thus, for the reasons we have explained, we join our colleagues in the First, Second, and Fourth Districts in concluding that section 1170.95 does not apply to individuals charged with murder but convicted by plea of voluntary manslaughter.  (See *Turner*, *supra*, 45 Cal.App.5th at p. 433; *Cervantes*, *supra*, 44 Cal.App.5th at pp. 886-887; *Flores*, *supra*, 44 Cal.App.5th at p. 993; *Sanchez*, *supra*, 48 Cal.App.5th at p. 916; *Paige*, *supra*, 51 Cal.App.5th at p. 204; *Harris*, *supra*, 60 Cal.App.5th at p. 563.)  We also determine that section 1170.95 does not violate such individuals' federal and state rights to equal protection or due process or the prohibitions against cruel and/or unusual punishment.

## IV.   DISPOSITION

The superior court's order denying defendant's Penal Code section 1170.95 petition is affirmed.

_____

BAMATTRE-MANOUKIAN, J.

WE CONCUR:

_____

ELIA, ACTING P.J.

_____

DANNER, J.

*People v. McClure*
**H048280**

Trial Court: Monterey County Superior Court
Superior Court Nos.: SS161619

Trial Judge: Hon. Carrie McIntyre Panetta

Attorneys for Defendant and Appellant: William Robinson
Julie Ann McClure
Sixth District Appellate Program
95 S. Market Street, Suite 570
San Jose, CA 95113

Attorney for Plaintiff and Respondent: Xavier Becerra
The People
Attorney General of California
Lance E. Winters
Chief Assistant Attorney General
Jeffrey M. Laurence
Senior Assistant Attorney General
Donna M. Provenzano
Supervising Deputy Attorney General
Amit Arun Kurlekar
Deputy Attorney General

*People v. McClure*
**H048280**