Filed 7/13/23  Certified for Publication 8/11/23 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| DIANNE LEE,<br><br>      Plaintiff and Appellant,<br><br>v.<br><br>DAVID BRIAN CARDIFF,<br><br>      Defendant and Respondent. | A163817<br><br>(Contra Costa County<br>    Super. Ct. No. C1901123) |

This is an appeal from an order denying a post-trial motion for attorney fees.  We affirm.

**BACKGROUND**

Plaintiff and appellant Dianne Lee entered into a contract with defendant and respondent David Brian Cardiff (who does business as Advantage Pools Bay Area) for extensive landscaping work at Lee's new home.  The contract price of $231,500 was segregated between the construction of a pool and spa ($88,400) and the construction of other major landscaping items, including a pavilion with gas and electrical, an outdoor kitchen, an outdoor fireplace, and the installation of pavers, as well as other assorted landscaping items ($143,000).  Disputes arose as the work progressed, with Cardiff finally leaving the project.

1

Lee sued, asserting a number of causes of action, including breach of contract, negligent construction, and violation of contractor licensing laws, and seeking damages and disgorgement of what she had paid.[1] Following a bench trial, the court issued a 21-page statement of decision. The court largely rejected Lee's claims pertaining to the construction of the pool, agreed with some of her claims pertaining to the construction of the pavilion and some of the other landscaping items, and agreed with her claim that Cardiff had violated state contracting laws by hiring workers who were not licensed contractors and treating them as independent contractors, and not employees, for purposes of worker's compensation insurance coverage. Based on the latter claim, the court ordered disgorgement plus interest of $238,470. It also awarded contract and tort damages of $236,634, allocating $35,000 to deficiencies with the pool. The court rejected her fraud and elder abuse claims.

The contract did not have an attorney fees clause, and Lee subsequently moved for fees under Code of Civil Procedure section 1029.8 and Business and Professions Code section 7168.[2] The court declined to award discretionary fees under Code of Civil Procedure section 1029.8, ruling Cardiff had not knowingly violated the state contractor licensing law and disgorgement, in any event, was a sufficient penalty for violating that law. The court further ruled that because Lee was "unsuccessful on the vast majority of [her] swimming pool claims," there was no prevailing party under section 7168, which authorizes fees to "the prevailing party" in cases "arising out of a contract for swimming pool construction." (§ 7168.)

---

[1] Lee's husband was also a plaintiff but has since passed away.

[2] All further statutory cites are to the Business and Professions Code unless otherwise indicated.

2

On appeal, Lee raises a single issue—that the trial court erred in denying her attorney fees under section 7168.  Notably, she does not take issue with any of the trial court's findings or rulings on the merits of her claims.  Nor does she challenge the denial of fees under Code of Civil Procedure section 1029.8.

## DISCUSSION

### *The Pertinent Fee Statute*

Section 7168 provides as follows:

"In any action between a person contracting for construction of a swimming pool and a swimming pool contractor arising out of a contract for swimming pool construction, the court shall award reasonable attorney's fees to the prevailing party."

This statutory provision was enacted in 1969 as part of a new statutory scheme governing "contracts for swimming pool construction," added to the Civil Code as former sections 1725 et seq.  (Stats. 1969, ch. 583, § 1.)  The new scheme "specif[ied] certain terms that must be contained in 'every contract for the construction of a swimming pool.' " (*King v. Hinderstein* (1981) 122 Cal.App.3d 430, 436 (*King*); 52 Ops.Cal.Atty.Gen. 245, 247–250 (1969).)  The language of the fee statute as enacted is virtually identical to that of the present statute.  (Cf. § 7168 & Stats. 1969, ch. 583, § 1.)

In the initial provisions of the new statutory scheme, the Legislature expressly stated its purpose as follows:

"(a) The Legislature finds that a need exists for a more complete understanding between customers and contractors engaged in the swimming pool construction business regarding the content and conditions of transactions for swimming pool construction; that many misunderstandings have arisen because of the lack of a standard body of requirements relating to such transactions, and that certain sales and business practices and construction practices, have worked financial hardship upon the people of this state; that the swimming pool construction business has a significant impact on the economy and

3

well-being of this state, its communities, and it's individual citizens; that the problems which have arisen relative to the swimming pool construction business are peculiar to that business; and that the provisions of this title relating to the swimming pool construction business are necessary for the public welfare.

"(b) The Legislature declares that the purpose of this title is to create an area of understanding and to establish standards which will safeguard the people against imposition and financial hardship, and encourage competition, fair dealing, and prosperity in the swimming pool construction business."  (Former Civ. Code, § 1725, subds. (a) & (b); Stats. 1969, ch. 583, § 1.)

"This declaration evinced a legislative concern for protecting the public from fly-by-night contractors–independent from the builders of the residential house associated with the property–who abandon pool work after obtaining a substantial down payment or who finish the work in a substandard manner."  (*King, supra,* 122 Cal.App.3d at p. 439.)  "Legislative committee analyses on the payment schedule requirements under the former Civil Code scheme (former Civ. Code, § 1730.5; Sen. Bill No. 1836)," for example, "show[ed] concern over the fact that consumer complaints to the Contractors License Board about swimming pool construction were proportionately higher than for other types of construction."  (*Ibid.*, fn. 16.)

In 1976, the Attorney General was asked to address the interplay of these Civil Code provisions with provisions then newly added to the Business and Professions Code as article 10 of chapter 9 of division 3 governing "home improvement contracts" and codified as section 7150 et seq. (59 Ops.Cal.Atty.Gen. 549 (1976).)  This new statutory scheme stated, in part, that it " 'shall apply only to home improvement contracts' " for " 'proposed repairing, remodeling, altering, converting, or modernizing such building or structure.' "  (*Id.* at p. 550.)  It further stated, in part, that

4

" 'repairing, remodeling, altering, converting, or modernizing of, or adding to, residential property' " included, but was not limited to, " 'the construction, erection, replacement, or improvement of driveways, swimming pools, terraces, patios, landscaping, fences, porches, garages, fallout shelters, [and] basements." (*Id.* at pp. 551–552, italics omitted.)

The Attorney General concluded these new provisions of the Business and Professions Code applied where a contract for the construction "of a new swimming pool include[s] modifications to buildings or structures," but did not otherwise apply and in such case the contract would be subject to only the Civil Code contracting requirements. (59 Ops.Cal.Atty.Gen., *supra,* at p. 552.) The Attorney General additionally concluded that in those situations where both the home improvement contract provisions of the Business and Professions Code and the swimming pool contract requirement provisions of the Civil Code applied, the latter controlled, as they were "special provisions dealing expressly with construction of new swimming pools" and took "precedence over a conflicting general statute [such as the home improvement contract provisions of the Business and Professions Code] covering the same subject matter." (*Id.* at p. 554.)

In 1979, the Legislature moved the swimming pool construction contract requirements set forth in the Civil Code, essentially unchanged, to the Business and Professions Code as a new article—article 11, of chapter 9 of division 3.[3] (Former § 7165 et seq.; Stats. 1979, ch. 747, § 2; see *King, supra,* 122 Cal.App.3d at p. 436, fn. 8 [the Civil Code provisions governing the construction of swimming pools were repealed in 1979 "and incorporated

---

[3] The only substantive change in the statutory scheme was the addition of a provision declaring any violation of the new article 11 a misdemeanor punishable by a fine and/or incarceration in the county jail. (Former § 7173; Stats. 1979, ch. 747, § 2.)

with minor revisions into the Business and Professions Code"].) The attorney fees provision originally set forth in the Civil Code statutory scheme remained the same and was recodified as former section 7169. (Former § 7169; Stats. 1979, ch, 747, § 2.)

The following year, in 1980, the Legislature "clarified the incongruity formerly existing between provisions regulating swimming pool construction contracts and home improvement contracts." (*King, supra,* 122 Cal.App.3d at p. 436, fn. 8.) This included repealing the article 11 heading, so that the provisions governing home improvement contracts and those specifically governing swimming pools contracts were included in article 10. (Stats. 1980, ch. 138, §§ 6–10.) The attorney fee provision that was part of the statutory scheme specifically governing the construction of swimming pools, again, remained unchanged. (See Stats. 1980, ch. 138, §§ 6–10 [no changes to § 7169].) In 1991, the fee provision was renumbered as section 7168. (Stats. 1991, ch. 1160, § 53.) Its language remained, and has since remained, unchanged. (*Ibid.*)

What is apparent from this history is that the Legislature enacted the statutory fee provision at issue specifically to provide recompense to the party prevailing in a dispute over the construction of a swimming pool. The provision had its genesis in a statutory scheme dealing exclusively with "contracts for swimming pool construction." (Former Civ. Code, § 1725 et seq., capitalization omitted; Stats. 1969, ch. 583, § 1.) These provisions were later moved wholesale into the Business and Professions Code as article 11 of chapter 9 of division 3. (Former § 7165 et seq.; Stats. 1979, ch. 747, § 2.) A year later, the article 11 designation was repealed, bringing these provisions, again with virtually no substantive change, within article 10. That the fee provision has remained ensconced within the statutory provisions specifically

6

governing the construction of swimming pools, and that its language has remained virtually unchanged since its original enactment and codification in the Civil Code, reflects an unchanged and singular legislative intent—to reward the prevailing party in a dispute over the construction of a *swimming pool*.

It is also significant that when the Legislature repealed the article 11 heading in 1980, thereby bringing the statutory scheme governing swimming pool construction contracts within article 10, it did so without change to the attorney fees provision that had been part of this specific statutory scheme since its enactment in 1969. The Legislature could have, at that time, expanded the fee statute to provide for fees to the prevailing party in disputes over other home improvements, including, for example, driveways, patios, landscaping, fences, porches, and garages. (See § 7151, subd. (a).) But it did not. Rather, the Legislature has provided for fees in connection with claims based on statutory provisions set forth in article 10 in three specific contexts—violations of prohibitions and limitations on the financing of home improvements (§ 7159.2, subd. (f)), home improvement contracts procured by fraud (§ 7160), and disputes over the construction of swimming pools (§ 7168).

### The Trial Court's "No Prevailing Party" Determination

The trial court found that while Lee's contract "did involve the construction of a swimming pool, it also involved a great deal of other construction," which "included a pavilion, outdoor kitchen, pavers, patio tiles, walkways, landscaping, seating walls, a floating counter, electrical systems, a spa, and many other things." It concluded "[n]one of these non-swimming pool projects can reasonably be categorized as part of "a contract for

7

swimming pool construction," and as a result, Lee "cannot be entitled to an award of attorneys' fees for any work related to those projects."

As we have observed, Lee has not challenged any of the trial court's factual findings. Rather, she maintains the court erred as a matter of law by confining the applicability of section 7168 to her claims pertaining to the construction of the swimming pool and basing its "prevailing party" determination on the degree to which Lee succeeded, or failed to succeed, on those claims. She asserts, in a nutshell, that because both the swimming pool construction and non-swimming pool construction projects were set forth in a single contract with Cardiff (who held licenses for swimming pool construction, landscaping, and concrete work), her claims all "arose" from a swimming pool construction contract and section 7168 therefore applies to all the contracted-for work. The trial court rejected this assertion. So do we.

As we have chronicled, the fee provision at issue was enacted as part of a statutory scheme pertaining specifically, and exclusively, to swimming pool construction contracts, and the Legislature's plainly expressed purpose was to provide additional recompense to the prevailing party in a dispute over the construction of a *swimming pool*. The language of this statutory fee provision has never been altered, even when it was brought within the auspices of article 10 of chapter 9 of division 3 of the Business and Professions Code. Moreover, a review of the entirety of the statutory provisions within this article reveals they include two other statutory fee provisions applicable to two other specific contexts.

In short, the Legislature knows how to provide for statutory fees when it chooses to do so. And, indeed, with respect to the statutes set forth in article 10, it has done so in three specific contexts. The Legislature could have, of course, made any of these fee statutes more expansive. But it did

8

not.  (See *People v. Murphy* (2001) 25 Cal.4th 136, 159 [other statutory provisions demonstrated that when Legislature "wants a sentence calculated without consideration of some circumstance, it knows how to use language clearly expressing that intent"]; *Rittiman v. Public Utilities Com.* (2022) 79 Cal.App.5th 1130, 1056–1057 [other statutory provisions indicated Legislature knew how to add additional exemption language if it chose to do so].)  Nor is it appropriate for us to undertake this legislative task.  (See *Id.,* at p. 1055 [the courts " ' " 'may not add to or detract from a statute or insert or delete words to accomplish a purpose that does not appear on its face or from its legislative history,' " ' " quoting *Goals for Autism v. Rosas* (2021) 65 Cal.App.5th 1041, 1046].)

Lee takes the trial court to task for citing to *California Pools, Inc. v. Pazargad* (1982) 131 Cal.App.3d 601 *(California Pools)*.  In that case, a homeowner defended against a breach of contract claim by a contractor seeking payment for the construction of "an outdoor rock spa," arguing the contractor was barred from recovery by the statutory provisions governing swimming pool construction contracts.  (*Id.* at pp. 603–604.)  The Court of Appeal rejected the homeowner's argument "that spas, like swimming pools, are artificially created pools or tanks of water, that spas are frequently built by swimming pool contractors, that the evils which the statute sought to remedy vis-a-vis swimming pool construction exist with respect to spa construction as well, and that this court should effectuate the legislative purpose by interpreting 'swimming pool' to cover spas."  (*Id.* at p. 605.)

"A far more basic rule of statutory interpretation," said the court, "holds . . . that if the language of a statute is clear and unambiguous, there can be no room for interpretation.  Effect must be given to the plain meaning of the words chosen by the Legislature."  (*California Pools, supra,*

9

131 Cal.App.3d at p. 605.)  It went on to state "[t]he term 'swimming pool' is thoroughly unambiguous.  Neither when it first enacted the statute in 1969, nor when it transferred the legislation to the Business and Professions Code in 1979, did the Legislature define the term swimming pool, or assign to it a meaning other than its ordinary meaning, or give any indication that it intended a broader meaning to apply." (*Ibid.*)  "It is not the role of the court to expand the term's obvious and ordinary meaning." (*Ibid.*)  The Legislature could, of course, include spas within the ambit of the legislation.  But "[t]he argument that spas should be included in the statute to further the public policy which the statute seeks to promote should properly be addressed to the Legislature." (*Ibid.*)

Lee maintains *California Pools* "is factually inapposite."  And, indeed, the case involved facts different from those here.  But that does not detract from the reason the trial court cited to the case—to illustrate that the statutory scheme of which the fee provision is a part, by purpose and plain language, is directed at disputes over the construction of *swimming pools* and not at disputes over other kinds of home improvement projects.

Lee urges that *King, supra,* 122 Cal.App.3d 430, is a more persuasive case.  However, *King* does not undercut the statutory analysis in *California Pools* that is pertinent here.  The issue in *King* was whether the statutory scheme governing swimming pool construction contracts encompassed only the "construction of a conventional pool rather than the installation of a prefabricated pool." (*Id.* at p. 438, italics omitted.)  After pointing out that much of the construction work involved in installing an in-ground pool, whether traditionally built or built using a prefabricated shell, is the same (*ibid.*), and that the public policy underlying the legislation is the same regardless of the way in which a swimming pool is constructed (*id.* at p. 439),

the court concluded "the logical import of the legislative enactment was regulation of builders who contracted to install a swimming pool as a fixed part of a buyer's property, be it by conventional construction or by installation of a prefabricated unit." (*Id.* at p. 440.)

Thus, *King* examined the meaning of the phrase " 'contract for the construction of a swimming pool' " and sensibly concluded "swimming pool construction as used in former [Civil Code] section 1725 et seq. should be held to refer to subsurface installation of a prefabricated pool which becomes a fixed part of the residential realty." (*King, supra,* 122 Cal.App.3d at pp. 436, 440.) The case does not remotely support Lee's assertion that the statutory provision for fees in connection with disputes over the construction of swimming pools should be expansively interpreted to include disputes over the construction of other types of home improvements.

Lee's emphasis on the public policy reasons the Legislature enacted the statutory scheme governing "home improvement projects" and invocation of the general principle that consumer protection statutes should be interpreted broadly is also unavailing. As we have recited, section 7168 was not enacted as part of the statutory scheme governing "home improvement" contracts. Rather, it was enacted as part of the statutory scheme, enacted a decade earlier, specifically governing swimming pool construction contracts. Moreover, when the Legislature moved this specific statutory scheme into the Business and Professions Code as article 11 (of chapter 9 of division 3), the language of the pertinent fee provision remained unchanged. It also remained unchanged when the Legislature subsequently repealed the separate article heading, bringing this statutory scheme within article 10. And while consumer protection statutes are to be broadly construed, this principle does not authorize the courts to disregard the plain language of

11

such a statute or the legislative history of the statutory scheme of which it is a part. (See *Environmental Health Advocates, Inc. v. Sream, Inc.* (2022) 83 Cal.App.5th 721, 733 [protective purpose of statutory scheme "would be stymied by an overly broad interpretation . . . not supported by its language or governing regulations"]; *Rodriguez v. FCA US, LLC* (2022) 77 Cal.App.5th 209, 215, 220–222, rev. granted July 13, 2022, S274625 [rejecting expansive reading of language in Song-Beverly Consumer Warranty Act (Civ. Code, § 1790 et seq.) where not warranted by fundamental principles of statutory interpretation, including language of statute and legislative history].)

It is also a fundamental rule of construction that the courts " 'must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences.' " (*People v. Hernandez* (2021) 60 Cal.App.5th 94, 106, quoting *People v. Jenkins* (1995) 10 Cal.4th 234, 246; accord, *People v. Bullard* (2020) 9 Cal.5th 94, 107 [courts must interpret statutes to avoid absurd results]; *People v. Cook* (2015) 60 Cal.4th 922, 938, fn. 2 [courts interpret statutes to "avoid an absurd result the Legislature could not have intended"]; *In re Greg F.* (2012) 55 Cal.4th 393, 410 ["courts are obligated to 'adopt a common sense construction over one leading to mischief or absurdity' "].)

Lee's proffered interpretation of section 7168 would lead to such results. If she, for example, had hired a different contractor to construct the pavilion, outdoor kitchen, lay the pavers, and do the landscaping, she could not, even under the interpretation she now advocates, seek fees under section 7168. The Legislature could not have intended that fees under section 7168 turn on whether or not a swimming pool and other non-swimming pool

12

projects are done by the same contractor or different contractors. It is an absurd result and not one we can, or should, embrace.

In sum, the trial court did not err in ruling section 7168 applied solely to Lee's claims pertaining to the construction of the swimming pool and not to her claims pertaining to the non-pool projects.

The trial court went on to conclude there was "no prevailing party" in connection with the swimming pool claims. As the court explained, Lee "claimed that a massive repair was necessary that included a costly stitch pier wall on the slope side of the pool or the destruction of the existing pool entirely followed by reconstruction with significant underpinning. The cost of such repairs approached $200,000." The court, however, "found [Lee] did not establish any of these claims and that there was insufficient evidence that the pool was experiencing any form of movement." While the court agreed "the pool plaster, tile and coping" were "defective and awarded a total of $35,000 in damages" for those items, it went on to point out "[m]uch of that amount was for the plaster repair, a task Defendant Cardiff had offered to perform at no charge prior to suit." In short, the trial court concluded that with respect to the swimming pool, Lee did not come close to accomplishing her litigation objective.

All Lee has to say in her appellate briefing about the trial court's "no prevailing party" determination is that the court abused its discretion in this regard because its "initial premise [i.e., that the fee statute applied only to her swimming pool claims] was in error" and therefore "the conclusion flowing from that premise was equally flawed." In other words, because the court's threshold ruling was, according to Lee, "contrary to the statutory authority and policies promoted by" article 10 (of chapter 9 of division 3 of the Business and Professions Code), the court committed a "manifest abuse of

discretion" in concluding she had not prevailed. Thus, Lee's challenge to the trial court's "no prevailing party" determination is simply a recycling of her argument that the court erred in ruling the statutory fee provision applied only to her swimming pool claims. Having rejected that argument for all the reasons discussed above, we do not consider the court's "no prevailing party" ruling further.[4]

## DISPOSITION

The fee order and ensuing judgment are AFFIRMED. Respondent to recover costs on appeal.

---

[4] We therefore need not, and do not, consider any other arguments made by the parties as to the court's "no prevailing party" ruling.

_____

Banke, J.

We concur:

_____

Humes, P.J.

_____

Bowen, J.*

**Judge of the Contra Costa County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

A163817, Lee v. Cardiff

Filed 8/11/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| DIANNE LEE,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>DAVID BRIAN CARDIFF,<br><br>        Defendant and Respondent. | A163817<br><br>(Contra Costa County<br>Super. Ct. No. C1901123)<br><br>ORDER CERTIFYING OPINION FOR PUBLICATION<br><br>[NO CHANGE IN JUDGMENT] |

THE COURT:

        The opinion in the above-entitled matter, filed on July 13, 2023, was not certified for publication in the Official Reports.  After the court's review of a request under California Rules of Court, rule 8.1120, and good cause established under rule 8.1105, it is hereby ordered that the opinion should be published in the Official Reports.


Dated: _____                    _____

                                   Humes, P. J.

Trial Court:  Contra Costa County Superior Court

Trial Judge:  Hon. Steven K. Austin

Counsel:
Alves Radcliffe and Suzanne M. Alves, for Plaintiff and Appellant.

Wood Smith Henning & Berman, David S. Webster and Steven R. Disharoon, for Defendant and Respondent.